13994. KISER COMPANY *v.* PADRICK.

1. " In a suit for damages growing out of a breach of contract, the petition is not demurrable on the ground that it does not state whether the contract was in writing. A general allegation of the execution of a contract is sufficient; the specific character of the contract being a matter of proof. If the contract is of a kind required by the statute of frauds to be in writing, the presumption is that it was in writing." *Ga., Fla. & Ala. Ry. Co.* v. *Parsons,* 12 *Ga. App.* 180 (1) (76 S. E. 197). It not appearing upon the face of the petition that the contract was in parol, no question as to a compliance with the statute of frauds is involved on demurrer. See also *Ansley* v. *Hightower,* 120 *Ga.* 719 (3) (48 S. E. 197); *Crovatt* v. *Baker,* 130 *Ga.* 507 (3) (61 S. E. 127).

The same rule would apply as to express trusts,— which are required to be in writing. *Eaton* v. *Barnes*, 121 *Ga.* 548 (2).

2. "A contract will be construed as made for a legal, rather than for an illegal purpose; and the more especially when such contract is attacked by a party thereto who has been benefitted thereby." *Virginia Bridge Co.* v. *Crafts*, 2 *Ga. App.* 126 (3) (58 S. E. 322).

3. "'Courts hold themselves bound to the observance of rules of extreme caution, when invoked to declare a transaction void on grounds of public policy; and prejudice to the public interest must clearly appear before a court will be warranted in pronouncing the transaction void on this account. It is not to be lightly inferred from facts and circumstances of doubtful import and meaning, or which may admit of different construction, one consistent with and the other opposed to unquestioned policy.' *Smith* v. *DuBose*, 78 *Ga.* 415 (3 S. E. 314, 6 Am. St. Rep. 260)." *Virginia Bridge Co.* v. *Crafts*, supra.

4. While it is true that a contract whereby it is agreed that one of the parties thereto shall refrain from bidding upon property to be sold at public outcry at a bankruptcy sale, and that the other shall bid upon the property, and, upon buying it, resell it to the one not bidding for the price of the accepted bid and for the further consideration that the one not bidding shall assume to the bidder a debt which was owing to the latter by the bankrupt, will be void as against public policy, if the contract is not the result of a bona fide cooperation on the part of the parties thereto to render a service to the creditors which neither alone could perform or which could be better performed by the cooperation of the parties to the contract (*Rittenbaum* v. *Cohen*, 29 *Ga. App.* 87 (1), 113 S. E. 828), yet where it does not appear that both of the parties would have bid upon the property but for the making of the agreement, and the only effect of the agreement appearing is that while one bidder is eliminated another is substituted in his stead, it neither being shown nor presumable as a matter of law that the latter, except for the making of the contract, would or would not have been a bidder, or that the agreement was tainted with an illegal purpose, the agreement should not be held unenforceable upon demurrer, but should be submitted to the examination of a jury, the question of the object or purpose of the contract being one of fact to be determined upon the trial by evidence. If the agreement is the result of a fraudulent combination to suppress and stifle fair competition, it should not be enforced at the instance of either party; otherwise, as between the parties, if the agreement is the result of honest cooperation, though competition may be lessened thereby, the principal question *as between the parties* to the agreement being one of intention. *Virginia Bridge Co.* v. *Crafts*, 2 *Ga. App.* 126 (6) (58 S. E. 322); 16 R. C. L. 69, § 50; 15 Am. & Engl. Encl Law, 950-1.

5. Accordingly, a contract between P. and K., wherein it is agreed that K. will buy the assets of a bankrupt at a public sale, and then resell the property to P., who was the general manager of the bankrupt until its bankruptcy, at the price for which it was bid in by K., and for the further consideration that P. will assume or pay to K. an indebtedness

of the bankrupt to the latter, will not be held void as against public policy, upon demurrer to an action by P. against K. for a failure to abide by the contract after the purchase of the property by K., although it appears that P. would have bid upon the property in the absence of the agreement, but not whether, but for the agreement, K. would have bid, there being no presumption that K. would have become a bidder but for the agreement, and no sufficient facts appearing in the petition from which a fraudulent intention can be presumed as a matter of law. Whether the agreement had for its purpose the unfair elimination of a bidder, rather than the fair substitution of the one for the other, or an honest combination of the purchasing strength of the two, is a question for a jury to determine under the evidence. The illegality of the contract does not " affirmatively appear." See, in this connection, *Robson* v. *Weil*, 142 *Ga.* 429 (2) (83 S. E. 207).

6. Such a contract is sufficiently definite as to the consideration or price. See, in this connection, *Freeman* v. *Cooper*, 14 *Ga.* 238 (1); *White* v. *Crew*, 16 *Ga.* 416; *Mathews* v. *Starr*, 68 *Ga.* 521; *Pearson* v. *Horne*, 139 *Ga.* 453 (3) (77 S. E. 387); Civil Code, § 4128.

7. While the right of P. to bid upon the property may not have been a thing of value, so as to constitute a consideration for the agreement of K. (*Lyons* v. *Bass*, 108 *Ga.* 573, 578, 34 S. E. 721; *Roughton* v. *Rawlings*, 88 *Ga.* 819, 822, 16 S. E. 106), the promise of P. to assume the debt of the bankrupt to K. would supply this necessary element of the contract. *Wright* v. *Waters*, 12 *Ga. App.* 308 (77 S. E. 106).

8. An original undertaking by one person to become primarily liable for the debt of another is not within the statute of frauds, and regardless of whether the rule announced in the first headnote would apply to a promise, within the statute of frauds, by one person to answer for the debt of another, when offered as a consideration for an agreement by the creditor to the promisor, the agreement in the instant case of P. to assume the debt of the bankrupt to K. was not within the statute. *Holcomb* v. *Mashburn*, 10 *Ga. App.* 781 (74 S. E. 307), and cases cited.

9. If the contract was originally unilateral, binding only upon K., its acceptance by P. with his offer of compliance before its withdrawal by K. would supply the element of mutuality. But the contract as made does not appear *originally* to have been wanting in mutuality. *Buick Co.* v. *Thompson*, 138 *Ga.* 282 (75 S. E. 354); *Hardin* v. *Case Co.*, 134 *Ga.* 813 (1 b) (68 S. E. 648); *Owenby* v. *Georgia Baptist Assembly*, 137 *Ga.* 699 (1) (74 S. E. 56, Ann. Cas. 1913B, 238); *Robson* v. *Weil*, supra.

10. The averments of the petition as amended, that the contract was made through a named agent of the defendant in a given county on a given date, were sufficient as to time and place of the making of the contract, and the allegation that the performance was to be in the same county was a sufficient averment of the place for performance, as to a contract of the particular nature here involved. Compare *Georgia Construction Co.* v. *Horton*, 135 *Ga.* 58 (2) (68 S. E. 794).

11. In view of the averments that the bankruptcy sale was to take place on February 24, that the contract between the parties was to be per-

formed on February 27, " and as soon as said sale was confirmed by the referee," and that as soon as the sale was confirmed, the plaintiff offered and the defendant refused a performance, with the result that the plaintiff *is* damaged, a further allegation as a basis for the measure of the damage, that the property *was* of a value stated may be reasonably construed to have reference to the value at the time of the breach, no other dates being referred to than those of the sale, the confirmation, and the breach, and the date of the breach being the one mentioned last preceding the allegation as to value. " All pleadings must receive a construction in accordance with the natural intendment of the language " used (*Athens Mfg. Co.* v. *Rucker*, 80 *Ga.* 291, 294, 4 S. E. 885), and " was " will relate back to the date stated next above it. Thus the measure of damages — the difference between the contract price and the market price at the time and place for delivery — was sufficiently alleged.

12. An averment in regard to the authority of a named agent of the defendant with whom the contract *was made* is not destroyed by a further allegation that after the making of the contract and after the bankruptcy sale, the defendant, through a second agent, referred the plaintiff to a third agent as the one having the authority to *carry out* the agreement declared on.

13. An averment that an agent was " duly authorized " to act for his principal is not objectionable as being a conclusion. 16 Enc. Pl. & Pr. 900.

14. The tender alleged was sufficiently conformable to the terms of the contract, but if it were not, the petition alleges a refusal of the defendant upon other grounds, and this would cure any defect in the tender, the plaintiff sufficiently alleging a readiness, willingness, and ability to carry out the contract as made. Civil Code (1910), § 4322.

15. That no copy of the contract was attached was not a good ground of demurrer. *Lynah* v. *Citizens & Southern Bank*, 136 *Ga.* 144 (2) (71 S. E. 469) ; *Dotson* v. *Savannah &c. Co.*, 140 *Ga.* 161 (1) (78 S. E. 801).

16. The court did not err in overruling any of the demurrers.

DECIDED JUNE 25, 1923. REHEARING DENIED AUGUST 24, 1923.

Action for breach of contract; from city court of Hinesville — Judge W. C. Hodges. August 11, 1922.

M. C. Kiser Company excepts to the overruling of its general and special demurrers to the complaint of W. O. Padrick, which alleges:

" 1.   That the M. C. Kiser Company is a corporation, incorporated under the laws of Georgia, having an office, place of business, and agency in Liberty county, Georgia, and transacts business there, said offices, places of business, and agencies being located in the towns of Hinesville and Willie in said county.

" 2.   That under the order of the referee in bankruptcy, the assets of the Hinesville Furniture Company, a bankrupt, were

advertised to be sold on the 24th day of February, 1922, at public outcry, to the highest bidder, the assets of said bankrupt consisting of the stock of merchandise, fixtures, and equipment, notes, accounts, furniture leases of the business located at Hinesville, Ga., and the branch business located at Willie, Ga.

"3. That it was the desire and intention of petitioner to buy said assets at said sale and to enter into a furniture and general merchandise retail business at Hinesville, Ga.

"4. With this intention in view, which said intention was well known to the said M. C. Kiser Company, your petitioner and the said M. C. Kiser Company, who was then and there one of the largest creditors of the said Hinesville Furniture Company, bankrupt, entered into the following contract, to wit: That for and in consideration of the fact that your petitioner would agree to assume the said debt owed by the said Hinesville Furniture Company to the said M. C. Kiser Company, which amounted to $1,200, that the said M. C. Kiser Company would bid in the assets of said Hinesville Furniture Company at said bankrupt sale, which was to be on the 24th day of February, 1922, said sale to be at public outcry to the highest bidder for cash at Hinesville, Ga.; that the said M. C. Kiser Company would bid in and buy said assets at said sale, said assets consisting of the stock of merchandise, fixtures and equipment, notes, accounts, and furniture leases of the business located at Hinesville, Ga., and of the branch business located at Willie, Ga., and would then and there turn over to said W. O. Padrick said assets, stock of goods, fixtures, and equipment, notes, accounts, and furniture leases, and would execute all proper and necessary assignments and transfers to pass the title to the said W. O. Padrick, the said W. O. Padrick to pay the said M. C. Kiser Company the amount of the indebtedness of the Hinesville Furniture Company, above referred to, and the price paid by the said M. C. Kiser Company for said assets at said sale, said payment to be made as follows: $400 cash and the balance in four quarterly equal installments, the cash payment to be made upon the delivery of said assets and the said deferred payments dating from the said delivery, each for one fourth of balance of said purchase price after deducting $400 cash, payable respectively three, six, nine, and twelve months from date of said delivery, for which said deferred payments said W. O. Padrick was to give

his four promissory notes to the said M. C. Kiser Company, with good indorsement thereon, to become due on the dates of said installments respectively.

"5. That said contract was made in and was to be performed in Liberty county, Ga.

"6. That on the day of said sale, which was on the 24th day of February, 1922, the said M. C. Kiser Company bid in said assets, as it had contracted with your petitioner so to do, for the sum of $1,700.

"7. That your petitioner was present at said sale, but did not bid thereon, as he was relying on the said contract, and verily believed that the said M. C. Kiser Company was bidding in said assets for petitioner and would turn over and deliver the same to him as contracted.

"8. That immediately after said sale that petitioner, believing the terms of said contract would be carried out, offered to perform his part of said contract, but the said M. C. Kiser Company breached their contract and refused to carry out their part thereof or to comply with said contract and informed your petitioner that they would not abide by said contract.

"9. That though your petitioner has repeatedly offered to comply with his part of said contract and has demanded that said defendant turn over to him the said assets of said furniture company, consisting of the stock of merchandise, fixtures, and equipment, notes, accounts and furniture leases, according to the terms of said contract, said defendant refuses so to do.

"10. That by the breach of said contract your petitioner is greatly damaged, to wit, in the sum of $22,093.59, the assets of said The Hinesville Furniture Company, bankrupt, being of the value of $24,993.59, and the amount under said contract to be paid by said W. O. Padrick being $2,900.

"11. That your petitioner was the general manager of said The Hinesville Furniture Company, and was such for many years, and, from his peculiar knowledge and familiarity with the business and the customers of said business, he would be able to realize more out of said business than any one else, which was well known to defendant with whom said contract was entered into, and then and there in the contemplation of said parties.

" 12.   By reason of the facts above set out the said defendant has damaged your petitioner in the sum of $22,093.59."

In response to the special demurrers an amendment was offered and allowed, naming the agents of the defendant with whom the plaintiff dealt, the date on which the contract was to be performed, the dates and places of the tenders by the plaintiff, and the refusal of the defendant to comply with the agreement, stating the time and details of this refusal immediately preceding the conclusion of the amendment, as follows: " That the market value of the assets of the said Hinesville Furniture Company which defendant was purchasing and sold to said plaintiff was of the value of $24,993.59, and this plaintiff has been damaged in this amount, less the purchase price, which he agreed to pay said defendant, to wit, $2,900."

*Girardeau & Elmore, Little, Powell, Smith & Goldstein,* for plaintiff in error.

*Darsey & Mills,* contra.

BELL, J.   (After stating the foregoing facts.)

Without the slightest desire to bury the demurrers of the plaintiff in error, we think it unnecessary to set them forth in detail. The points which they raised may be sufficiently indicated by our rulings as announced in the headnotes.

The most important question involved is whether the agreement was void as against public policy.   The principal Georgia case on this question seems to be that of *Graham* v. *Theis, 47 Ga.* 479. There it appears that one person was induced, for a consideration, not to bid at an administrator's sale, by another, who did bid and bought the property, both intending to bid but for the agreement. It was held that the agreement was illegal and unenforceable by the person who was induced not to bid, the Supreme Court saying: " It amounts to a contract to commit a fraud upon the deceased's estate, by stifling bids at the sale."   The headnote is rather broad in the statement that " a contract that one will not bid at an executor's or administrator's sale is illegal."   While the result of the contract in the instant case was that Padrick, though originally intending to bid upon the property, failed to do so, it does not appear that both he and the plaintiff in error would have been bidders but for the agreement.   We think there is no presumption that the Kiser Company would or would not have

been a bidder, in the absence of the contract, and we cannot say that the effect of the agreement was to eliminate a bidder, rather than to substitute another. The facts as pleaded do not disclose, as a matter of law, that the parties entered into a fraudulent combination, rather than an honest union of their strength, from which the creditors might have been benefited. It may be that the Kiser Company would not have cared to bid unless it knew that it would be able promptly to dispose of the property, and while, construing the petition most strongly against the plaintiff, it sufficiently appears that he, as well as the Kiser Company, was able to make the purchase, a fraudulent intent on his part should not be presumed as a matter of law merely because he agreed as the consideration for the undertaking by the other party that he would assume the liability of the bankrupt to it. Perhaps Padrick felt some moral responsibility to this creditor to make good the loss which it would otherwise sustain, since he was the general manager of the corporation now in bankruptcy, under whose administration, and at whose procurement, it may be, the credit was extended. For some special reason he may have desired to preserve the good will of this particular creditor more than that of others, in case he should carry on the business previously owned by the bankrupt. Or it might have been that, notwithstanding his apparent ability to buy the property himself directly at the sale, he desired an arrangement by which he could pay by installments, rather than for cash; and while it is true that the assumption of a $1,200 debt would be a tremendous price to pay merely for the better terms, that was an affair of his own, if his action was prompted by no fraudulent motive or purpose to chill the sale. This would be a circumstance for the consideration of the jury on the question of intention, but we cannot say it is conclusive of bad motive.

Of course, if the object of the agreement was to suppress and stifle fair competition and thereby to acquire the property for less than its value, it should not be enforced at the instance of either party; otherwise, *as between the parties,* if the agreement is the result of honest cooperation, though the actual consequence may have been to lessen competition, the principal question as between the parties being whether the intention was fraudulent or bona fide, to be determined by a jury under the evidence.

We do not think this decision is in conflict with anything said in *Ruis* v. *Branch,* 138 *Ga.* 150 (74 S. E. 1081, 42 L. R. A. (N. S.) 1198), or with *Barnes* v. *Mays,* 88 *Ga.* 696 (16 S. E. 67). A reading of the decision in the former case will disclose facts materially different from those now before us. In the latter case it was said (first headnote) that "a person wishing to purchase land at administrator's sale commits a fraud by hiring another not to bid against him. On discovery of the fraud after the sale has been consummated, the purchase-money paid and a conveyance executed, the sale will be set aside at the instance of the administrator." What we have already stated will clearly show the difference between that case and this. In the recent decision of this court in *Rittenbaum* v. *Cohen,* supra, it affirmatively appeared that the contract was not "the result of bona fide co-operation on the part of the parties thereto to render a service which neither could alone perform, or which could be better performed for the benefit of the government by the co-operation of the parties to the contract."

If it can reasonably be done, a contract will be construed as made for a legal rather than an illegal purpose, the more especially when a contract is attacked by a party thereto who has been benefitted thereby. See *Robson* v. *Weil,* supra.

Whether the contract pleaded is an illegal one must be determined by a jury under the evidence, having special reference to the intention with which it was made.

The court did not err in overruling the general demurrer, nor any of the special demurrers. We do not deem it profitable to add more to what is said in the headnotes.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*