## 15598. PADRICK v. KISER COMPANY.

A private business corporation created under the laws of this State, with its principal office in a given county, can not be sued in another county for a breach of contract, unless it has an office and transacts business there. The fact that it may have an agent in the county, without more, is insufficient to confer jurisdiction. It indisputably appearing in this case that the defendant, a corporation of that character, was sued in a county other than that in which its principal office was located, and that, although it had previously maintained an office or place of business in the county of the suit, such office or place of business had been discontinued when the suit was filed, it follows that the court did not err in directing a verdict in favor of the defendant's traverse of the entry of service and its plea to the jurisdiction.

DECIDED OCTOBER 18, 1924.

Complaint; traverse of service entry; from city court of Hinesville—Judge Sheppard presiding. January 29, 1924.

*Darsey & Mills, Oliver & Oliver, John Z. Ryan,* for plaintiff.

*B. A. Way, Little, Powell, Smith & Goldstein,* for defendant.

BELL, J.   W. O. Padrick sued M. C. Kiser Company for an alleged breach of contract. This court affirmed the judgment of the trial court in overruling demurrers to the complaint in *Kiser Co. v. Padrick,* 30 *Ga. App.* 642 (118 S. E. 791). The case is here now upon exceptions by Padrick to the direction of a verdict in favor of a traverse to the entry of service and a plea to the jurisdiction, filed by the defendant.

The petition alleged: "That the M. C. Kiser Company is a corporation, incorporated under the laws of Georgia, having an office, place of business and agency in Liberty county, Georgia, and

transacts business there; said offices, places of business and agencies being located in the towns of Hinesville and Willie in said county;" and that the contract alleged to have been breached was made and was to be performed in Liberty county, in which the suit was filed. The sheriff's entry of service, dated April 10, 1922, was: "I have this day served E. C. Elmore and E. Henderson as agents of defendant co. who are in charge of the offices and places of business in Hinesville, Ga., and Willie, Ga., personally with a true copy of the within petition and process." The traverse and plea to the jurisdiction denied that either Elmore or Henderson was the defendant's agent, and averred that it did not at the filing of the suit have any agency, office, or place of business in Liberty county, but that its principal office, as fixed by its charter, was in Fulton county, Georgia, and that the courts of that county, and not the city court of Hinesville, had jurisdiction of the cause of action alleged against it.

"Any corporation, mining, or joint-stock company, chartered by authority of this State, may be sued on contracts in that county in which the contract sought to be enforced was made or is to be performed, if it has an office and transacts business there. Suits for damages, because of torts, wrong or injury done, may be brought in the county where the cause of action originated. Service of such suits may be effected by leaving a copy of the writ with the agent of the defendant, or if there be no agent in the county, then at the agency or place of business." Civil Code (1910), § 2259. The defendant's charter was introduced, and disclosed that its principal office was in Fulton county. The evidence showed that prior to April 8, 1922, Elmore was the defendant's agent to sell out a stock of goods bought by it at a bankrupt sale, of which a part was situated at Hinesville and a part at Willie, both in Liberty county. It appears that prior to this date the defendant had an office and transacted business at one, if not at both, of these places, within the purview of the above code section. If Henderson had ever been more than a mere subordinate employee of the defendant, it is conclusively established that all relation between him and the company had been dissolved prior to the service of the suit.

It was shown without dispute that on April 8 Elmore called up the defendant's office in Atlanta by telephone and consummated a

purchase of the entire lot of goods upon terms definitely agreed upon, by which he was to pay a part of the purchase-money in cash and was to give his note for the remainder, which he executed and delivered on April 12. From the time of this agreement he regarded the property as his own, and made no further sales and transacted no other business with reference thereto in behalf of the company. Thereafter the company had no office or place of business in Liberty county, and no agent therein, unless contrary inferences may be drawn from a letter written by the defendant from Atlanta to W. I. McLamb, of Lambert, Georgia, on April 11. This letter was as follows: "We have yours of the 8th instant, received today, advising us that [if] we have for sale the stock of merchandise and notices [notes] and accounts of the Hinesville Furniture Company, you would be pleased to hear from us in detail, as you would like to figure with us on the stock. We are referring your letter to our attorney Mr. E. L. Elmore, Claxton, Georgia, who has this matter in charge for us, and you can communicate with Mr. Elmore, or he will no doubt communicate with you, provided he has not already made some disposition of the stock of goods and notes and accounts."

Even though regarding this letter as tending to show that Elmore was still the agent of the defendant on April 11, he having been served on April 10, we do not think that it was sufficient to raise an issue as to whether the defendant had an office or place for the transaction of any business in Liberty county after April 8. McLamb's inquiry evidently had reference to a probable purchase of the entire stock in bulk, and the reply was to the same point. Such a sale would not be transacting business within the terms of the code-section cited above. The phrase "transacting business" implies continuity or custom; more than a single transaction without any purpose of engaging generally in carrying on business. 8 Words & Phrases, 7059, and citations; 4 Words & Phrases (second series), 967. To have been perfectly frank, the letter should have stated that the properties had already been sold. It may be that the writer was desirous of bringing McLamb and Elmore together as a favor to the latter, and considered that such purpose might be best accomplished by the form of the letter as written. Or the defendant may have supposed that it continued to have a claim or right in the goods until Elmore had paid for them or delivered his

2

note.: It might even bo true that Elmore's remittance in cash had not been received, and the defendant was not sure of the exact status from Elmore's standpoint,—that is, whether the sale should be considered executed. Whatever may have been in the mind of the author of the letter, and regardless of any other inference that may be drawn therefrom, it could not amount to an admission that the defendant was continuing to maintain an office or place for the transaction of business, in the sense employed by the statute. This being true, it is immaterial that the letter might have been construed as an admission of Elmore's continuing relation as agent.

.Notwithstanding the contract in question may have been made, and was to be performed, in the county of Liberty, the defendant, being a domestic corporation with its principal office fixed by its charter in Fulton county, could not be sued in Liberty, unless it had an office and transacted business there. *Tuggle* v. *Enterprise Lumber Co.,* 123 *Ga.* 480 (51 S. E. 433). It was not enough that the defendant may have had an agent in the county. It was a prerequisite to the jurisdiction of the court that at the filing of the suit the defendant should have had in that county a place at which it transacted business. Compare *Atlanta Accident Asso.* v. *Bragg,* 102 *Ga.* 748 (2 S. E. 706); *Orebaugh* v. *Equity Life Asso.,* 115 *Ga.* 842 (42 S. E. 208). The word "office" as used in the code section mentioned is synonymous with "place of business." *General Reduction Co.* v. *Tharpe,* 11 *Ga. App.* 334 (75 S. E. 339).

It indisputably appearing that the defendant, however shortly before, had ceased to maintain any office or place where it transacted business in the county, it was not suable therein, although it might be bound by admissions than it yet retained Elmore as its agent, and even though, as we have seen above, such agent might have had authority to sell for the defendant a stock of goods, with the notes and accounts, in bulk, provided the purchase of the same by himself was not to be treated as a closed deal.

Section 2563 of the Civil Code (Code of 1895, § 2145), prior to the act of 1902 (Ga. L. 1902, p. 53), by which the word "agent" was substituted for the word "agency," provided among other things, as to the venue of suits against insurance companies "having agencies or more than one place of doing business," that such an insurance company might be sued in any county where it had an *agency* or place of doing business. The word "agency," as there

used, meant the same as "place of doing business." See the *Bragg* case, supra. Thus, the part of this section to which we have just referred is the same in effect as the portion of section 2259 under which the present case must be determined; and the *Bragg* and *Orebaugh* cases, while dealing with the venue of suits against insurance companies under section 2563, become authority in this case. See also *Equity Life Asso.* v. *Gammon,* 118 *Ga.* 236; *Ætna Ins. Co.* v. *Brigham,* 120 *Ga.* 925 (44 S. E. 978). It was said in the *Bragg* case that it was "a prime requisite to the jurisdiction of the court that the company should have established in that county a place at which its business was transacted by its agent. . . It might have had a mere traveling solicitor of insurance who had no fixed place of doing business in the county of [the suit]; and under such circumstances, the averment in the declaration [that it had an *agent* and transacted business in that county] could be true and yet the court not have jurisdiction of the company." It was held that the petition was bad for failing to show that the company had an *agency,*—that is, a place of doing business,—in the county.

It does not conclusively appear that Elmore remitted his cash payment prior to April 10, the date of the entry of service upon him. Whether his agreement with the company on April 8 constituted an executed sale, or merely an executory contract between the parties by which the one agreed to buy and the other to sell, the relation between them was changed from that of principal and agent for the purpose of carrying on any business of the defendant within the meaning of the Civil Code (1910), § 2259, and Elmore was thereafter a purchaser or one having contracted to purchase, although the company may have intended, as might be inferred from the letter in question, to treat him as their agent for the purpose of selling the property in bulk (not to carry on business for it), in case the agreement between them of April 8 did not prove effective. Thus, to give the fullest effect to any admissions contained in the letter, it fails to show that the company had an office in Liberty county at which it transacted business at the filing of the suit.

If the defendant had owned a lot of land in that county and had offered it for sale through a local agent even empowered to sell and convey, would this, without more, have made it suable in

that county upon a contract made or to be performed there? We do not think so.

Elmore did not reside in Liberty county, but in Claxton in the county of Evans. This fact, however, would be immaterial (*Great Eastern Casualty Co.* v. *Haynie,* 16 *Ga. App.* 643 (2 *b*), 85 S. E. 938), if he had had a place of business in Liberty county even of his own (which he did not have) where the business of the defendant was conducted by him as agent (*Orebaugh* case, supra), if the defendant had no office or place of business of its own in that county. *Ætna Insurance Co.* v. *Brigham,* 120 *Ga.* 925 (48 S. E. 348).

It follows from what we have said above that the court did not err in directing a verdict in favor of the traverse and plea to the jurisdiction.

The views herein expressed are entirely consistent with the decisions in *Ellis* v. *Southern Express Co.,* 27 *Ga. App.* 738 (110 S. E. 43), and *Reeves* v. *Southern Ry. Co.,* 121 *Ga.* 561 (1) (49 S. E. 674, 70 L. R. A. 513, 2 Ann. Cas. 207).

Whether the traverse and plea to the jurisdiction should have been disposed of in advance of the hearing of the general demurrer, and whether the rights of the defendant under such dilatory proceedings were waived when it prosecuted the general demurrer first in order (*Padrick* v. *Kiser Co.,* 30 *Ga. App.* 642, 118 S. E. 791), the plaintiff has not insisted, either in the court below or in this court, that any such waiver was made, but the sole reason urged for reversing the judgment is that the evidence as adduced upon the trial of the special pleas would have authorized a contrary verdict from that directed. We can not concur in this contention, but entertain the opinion that the evidence demanded the verdict as directed.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*