## No. 16,069.

JONES ET AL. DOING BUSINESS AS A. D. JONES AND COMPANY *v*. BOARD OF ADJUSTMENT OF THE CITY AND COUNTY OF DENVER ET AL.

(204 P. [2d] 560)

Decided March 14, 1949.

Mr. DONALD W. MARSHALL, for plaintiffs in error.

Mr. J. GLENN DONALDSON, Mr. ABE L. HOFFMAN, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

THIS is an action in the nature of mandamus. The parties appear in this court in the same order as in the trial court. We hereinafter refer to them as petitioners and respondents.

Petitioners were, on January 6, 1947, the owners of real estate commonly known as 1011 Pennsylvania street in Denver, and on that date applied to the respondent Lyle D. Webber, at that time Chief Building Inspector for the City and County of Denver, for a

permit to remodel the building on the premises in order that the same might be converted into a "small real estate office." The respondent building inspector denied the application and informed petitioners that the matter should be presented to the Board of Adjustment as provided for by the Building Zone Ordinance of the City and County of Denver. Petitioners thereupon consulted Mr. Ameter, secretary engineer of the Board of Adjustment, who advised them concerning the procedure in securing a hearing before that board. Petitioners presented a plan prepared by an architect which they intended generally to follow in the renovation and remodeling of said building. These plans called for a ground floor and second floor accommodations consisting of rooms described as waiting room, receptionist, audit, closing room, record room, toilet, office, etc. Petitioners unquestionably originally intended to make use of the entire premises as a real-estate office in connection with the real-estate business being conducted by them. During the pendency of the proceedings before the Board of Adjustment petitioners sought to include the possibility of use of a portion of the second floor as sleeping rooms. This appears to have been done in the belief that objections to the issuance of the permit might be overcome if a portion of the said premises was being used as a residence. The petitioners planned no change in the outside walls of the building, nor in the design thereof as it would appear from the outside. Petitioners testified that they employed a stenographer and seven salesmen, two or three of whom worked full time in connection with the real-estate business, and the others during their spare time. All of the said employees would be around the office occasionally and would refer to the premises as their office. The sole use which petitioners desired to make of said premises was that required by their own real-estate activities as conducted by them or their employees, and no part thereof would be rented to others for office use. The property in

question is located upon the rear of the lots, and was at one time used as a stable and garage as accessory to an old mansion adjoining the property on the south.

The real estate involved in this controversy is located in a residence D zone under the zoning ordinance of the City and County of Denver. Under the terms of the said zoning ordinance the uses to which buildings and premises may be put are most restricted in "residence A districts." These restrictions upon use are progressively lessened in each of the districts thereinafter named. The sections of said zoning ordinance which we must consider under this record are as follows:

"D. Residence 'D' and Residence 'E' Districts: In a residence 'D' or a residence 'E' district, no building or premises shall be used and no building shall be erected or structurally altered which is arranged, intended or designed to be used for other than one or more of the following uses: (1) A use permitted in a residence 'A', residence 'B', or a residence 'C' district. (2) Hotel. Dormitory. Sorority or fraternity house. (3) Office. Studio. Vocational or trade school or institution of similar character. Kindergarten or pre-school for children. School for abnormal adults or children. Day nursery for infants and children. Boarding home for infants and children."

Section 4 of the ordinance is as follows: "Section 4. Business District Uses: In a business 'A', business 'B' or business 'C' district, no building or premises shall be used and no building shall be erected or structurally altered which is arranged, intended or designed to be used for other than one or more of the following uses: (1) A use permitted in any residence district. (2) Commercial greenhouse. Bank. Office building. Fire station. Public utility. Electric sub-station. Ice delivery station for retail trade. * * *"

Section 7 of said ordinance provides among other things as follows: "Section 7. Accessory Uses in Residence Districts. (As amended by Ordinance No. 55,

Series of 1941.) A use accessory to a use permitted in a residence district shall be permitted in such district. A store, trade or business shall not be permitted as an accessory use, except that the office of a physician, dentist, surgeon or other professional person located in a dwelling or apartment occupied as a private residence by such physician, dentist, surgeon or other professional person may be permitted, and except a customary home occupation located in a dwelling or apartment occupied and used as a private residence if it is incidental to such residential use may be permitted, provided there are no employed assistants in any way connected with the operation of such home occupation. A restaurant, public dining room or other service customary to a hotel or an apartment hotel and incidental to its residential use may be located therein as an accessory use, provided that the public entrance to such restaurant or dining room is from within the building. * *. *"

The petitioners appealed to the Board of Adjustment and said board considered their application at three meetings and finally denied the application for the permit. In addition to the appeal from the decision of the building inspector denying the original application, petitioners made application for variation from the requirements of the zoning ordinance under a section of said ordinance authorizing the Board of Adjustment to give consent to a nonconforming use in a given district in the event they deemed it advisable in the exercise of their discretion. The application for variation also was denied by the Board of Adjustment. The said application for variation was unquestionably filed by petitioners in the nature of a prayer for alternative relief. The action of respondents with regard thereto is not further considered herein, since we dispose of this controversy upon a consideration of the right of petitioners to the permit applied for, without regard to the exercise of any discretion on the part of respondents to grant or deny the same. This cause was thereupon filed in the

district court of the City and County of Denver and the trial court reviewed the record before the Board of Adjustment and took evidence concerning the hearings conducted by the board. The court affirmed the action of the board in all respects and the petition of petitioners was dismissed. To have reviewed this judgment petitioners have sued out a writ of error.

It is contended by petitioners that their application was for a permit for a use of real estate, which by the plain terms of the ordinance is permitted; that the trial court erred in resorting to a construction of the ordinance when the terms establishing petitioners' rights were clear and unambiguous; that as construed by the court the ordinance deprived petitioners of their property without due process of law; and that the board's action was arbitrary, capricious and in excess of its jurisdiction.

Respondents contend that the inclusion of "office" use in a residence "D" district is confined to residential premises since "office" cannot be synonymous with "office building" which is permitted only in nonresidential districts; that petitioners sought to create an office building since, as they contend, any building which is used primarily for office purposes is an office building, even though only the owner uses it.

The Board of Adjustment construed the use as an "office" of premises in a residence "D" district to be limited in such use as an accessory use to the primary use of said premises as a residence, and held that no "office" could be maintained by a resident in a district "D" zone unless the person operating the same resided in the premises and unless in the operation of said "office" no persons acted as employees. The Adjustment Board held that a building in which an "office" use was carried on became an "office building" unless it was also occupied as a residence. Mr. Ameter, in explaining the interpretation given by the Board of Adjustment to the word "office" in section D (3), testified

as follows: "The Board has interpreted this to mean office shall be an accessory use to a private dwelling, or residence, where the owner of the dwelling lived and he maintained an office therein."

Mr. John F. Mueller, a member of the Board of Adjustment, testified as follows: "The ordinance provides that an office is a permissible use in either residence "D" or "E" as presently zoned. The confusion arises, apparently, on how the term should be applied. The dictionary definition of office is broad and general, and refers to a place from which business is conducted. In the accessory-use provisions of the ordinance it has a much more restricted definition. The feeling of the Board was that, if a building were converted and used solely for office purposes and nothing else, in the "D" and "E" areas, that the spirit and intent of the zoning ordinance would be violated. The term office should have a more restricted meaning, which apparently it has in the definition of accessory use."

The following is taken from the testimony of Mr. Mueller: "Q. I understand you to say that in construing the word office as it appears in the ordinance, the provision relating to residence 'D' and 'E' districts, you rejected the usual meaning of the word office and adopted the one contained in Section 7, accessory uses; is that correct? A. Yes. I wouldn't say rejected. The question is, what interpretation should be made of the word. Q. I understood you to say two definitions were considered; one was the usual one, and the other was the one contained in Section 7; and you felt it should be given a more restricted meaning than is usually given to the term accessory use. A. Yes. May I explain the reason for that? Q. Yes. A. For the reason that if the term office is given the ordinary dictionary definition, then any business, in which there is an office in connection with it, is entitled to operate in Residence 'D' and 'E' districts."

## Questions to be Determined.

First: *Was the petitioners' contemplated use of the premises in question as a real-estate office, in which a stenographer and several salesmen were to be employed, a use permitted under the provisions of section D (3) of the zoning ordinance?*

██ We consider briefly some basic fundamentals. The right to the use and enjoyment of property for lawful purposes is the very essence of the incentive to property ownership. The right to thus use property is a property right fully protected by the due process clause of the federal and state Constitutions. The use to which an owner may put his property is subject to a proper exercise of the police power. The so-called police power is the authority under which zoning ordinances have been universally upheld. In every ordered society the state must act as umpire to the extent of preventing one man from so using his property as to prevent others from making a corresponding full and free use of their property. Thus, under the police power, zoning ordinances are upheld imposing limitations upon the use of land, provided, however, that the regulations are reasonable, and provided further that the restrictions in fact have a substantial relation to the public health, safety, or general welfare.

██ It is elementary that an owner of property has the right to put his property to any legitimate use, unless the contemplated use is prohibited by the legislative arm of government through a proper exercise of the police power. *People ex rel. v. Hedgcock*, 106 Colo. 300, 104 P. (2d) 607. Accordingly, in the case at bar, the petitioners had the right to use their property for the purpose indicated unless the zoning ordinance forbids such use.

██ The trial court held that since the use contemplated by petitioners was unquestionably a "business" use, to grant the permit would have been, in effect, to eliminate the boundary line between Residence "D" and

"E" zones and business zones. The court said that the "unqualified use of the word 'office' in the ordinance does not necessarily mean that any office should be permitted." In this conclusion we think there was error.

The characterization of conduct as "business" or "no business" is not the test of uses permitted by section D of the ordinance. Many "businesses" are expressly permitted by said section of the ordinance, and the record discloses that numerous "business" activities are carried on in the immediate vicinity of the property involved. The ordinance here considered places no limitations upon the permitted use of property for office purposes. Certainly it cannot be disputed that the purpose of petitioners was the establishment of an office. The Board of Adjustment said in effect that while the petitioners desired to establish an office, they should not be permitted to do so, because they intended to conduct a "business" office. However the transaction of business of one kind or another is the only purpose for which an office is created. The word "office" is synonymous with "place of business." *General Reduction Co. v. Tharpe,* 11 Ga. App. 334, 75 S.E. 339; *Padrick v. Kiser Co.,* 33 Ga. App. 15, 124 S.E. 901.

Since the ordinance permits the creation and maintenance of an "office," without further definition or limitation, the respondents must give to the word its ordinary, and generally accepted, meaning, and cannot resort to unusual and strained definitions to work the denial of a use permitted within the familiar and popular understanding of the words used. The language of the ordinance is not ambiguous and permits of no resort to the construction attempted to be given it by respondents. We said in *People ex rel. v. Hinderlider,* 98 Colo. 505, 57 P. (2d) 894: "Where the language used is plain, its meaning clear, and no absurdity is involved, Constitution, statute or contract, must be declared and enforced as written. There is nothing to interpret. *People*

*ex rel. Seeley v. May,* 9 Colo. 80, 10 Pac. 641." This statement was approved and emphasized in *Cosmos v. Denver,* 101 Colo. 69, 70 P. (2d) 341. The rule here applicable is well stated in 43 C.J. 572, section 912, as follows: "As in the case with statutes, as an aid in the construction of an ordinance or by-law, it will be presumed that each clause and sentence has a purpose and use, that words and phrases used therein are used in their familiar and popular sense and without any forced, subtle, or technical construction to limit or extend their meaning * * *."

The conclusion that the ordinance does not permit the limited definition of the word "office" is further supported by the fact that in other sections of the zoning ordinance, limitations were placed upon a permissive use. In section 4 (5) the permitted uses include the following: "Hand laundry *employing not more than five (5) persons.* Printing shop *employing not more than five persons.*" (Emphasis supplied). The presence of limitations upon the uses here mentioned indicates clearly that if limitations were in fact intended in connection with the "office" use authorized in section D (3) they would have been similarly stated. Moreover we are confronted with a further and all-important legal principle, which is that rule which requires a strict construction of such an ordinance in favor of the right of a property owner to an unrestricted use of his property. We stated in *Chamberlain v. Roberts,* 81 Colo. 23, 253 Pac. 27: "* * * We consider the rule that the scope of an ordinance restricting one's powers over his own property ought not to be extended, but rather restricted by interpretation." It follows, therefore, that the question under discussion must be answered in the affirmative. The use contemplated by petitioners was a use permitted by section D (3) of the ordinance, and the trial court erred in holding to the contrary.

Second: *Did the remodeling contemplated by petitioners, considered with the proposed use of the entire*

*building by them for office purposes, amount to the erection or structural alteration of a building arranged, intended or designed for an office building within the meaning of section 4 of the zoning ordinance?*

It is argued by respondents that petitioners' application was, in substance, for a permit to create an "office building" which is a use not permitted in any district of a higher classification than business district uses as defined by the ordinance. To sustain this position it would be necessary to determine that petitioners desired to "erect" a building or to "structurally alter" an existing building for use as an "office building." The building here in question was already in existence and it cannot successfully be asserted that the permit applied for was for the "erection" of a building. The application shows upon its face that the remodeling of a masonry garage into a small real-estate office was contemplated; therefore if section 4 is applicable at all, it must be found that petitioners' application included a "structural alteration" of the building, or that the intended use was an "office building" use. Section 4 states that no building shall be "used" and no building shall be "erected or structurally altered which is arranged, intended, or designed to be used for other than one or more of the following uses: * * *." "Office building" is then named as a permissive use.

Section 29 (50) of the ordinance defines structural alterations as follows: "Structural alterations shall mean any change in the supporting members of a building, such as bearing walls, columns, beams or girders, floor or roof joists, or changes in the roof or exterior walls." In the plans submitted by petitioners no intention whatever was disclosed to make any structural alterations as thus defined. Accordingly we eliminate from consideration the element of erection of a building or structural alteration of a building as valid reasons for denial of the application. There remains, however, the question as to whether the contemplated use of the en-

tire building for office purposes by petitioners themselves amounts to an "office building" use within the meaning of section 4. We think not. We hold that by the use of the term "office building" the intent must have been to identify a type of business enterprise in which the supplying of office space to tenants is the primary business conducted by the owner upon the premises. The business of the petitioners could not be considered an office building business. It was that of real-estate brokers, and their use of all the space in conducting a real-estate business should not be construed to mean that they also were engaged in operating an office building business.

The foregoing disposition of the two questions discussed makes it unnecessary for us to consider other propositions urged by respondents since all of such other arguments are based upon the conclusion that the office use contemplated by petitioners was not a permissive use under section D (3), or that the remodeled premises became an office building. Since we hold that neither of these conclusions is tenable under this record, it becomes unnecessary to consider any argument based upon conclusions with which we do not agree.

The judgment is reversed, and the cause remanded with directions that the permit for which petitioners applied, be issued.

Mr. Justice Hays, Mr. Justice Jackson and Mr. Justice Alter dissent.

Mr. Justice Hays dissenting.

Sometime prior to January 6, 1947, plaintiffs in error made application to the chief building inspector of the City and County of Denver for a permit to remodel a masonry private garage at 1011 Pennsylvania street for the purpose of conducting therein his real-estate business. On January 6, 1947, said permit was denied and the applicant gave notice of appeal to the Board of

Adjustment from the decision of the inspector reciting therein that he was appealing from the action of said inspector in denying the permit "to alter and convert present private garage in Residence 'D' District into a Real Estate Office Building."

On the same day the plaintiffs in error filed an "Application for Variation from the Requirements of the Zoning Ordinance" and therein petitioned the board "under the discretionary power vested in your Board by Section 24-B to permit alteration-conversion of a private garage in Residence 'D' Zone into a Real Estate Office Building."

It, therefore, conclusively appears from the ordinance, "notice of appeal," and "application for variation from the requirements of the zoning ordinance" that the use contemplated by the applicant was not one permitted under the provisions of the ordinance. The sole question to be determined by the board on appeal, and application for variance, was whether or not said applicant was entitled to relief under the terms of section 24-B of the ordinance, which provides: "When in its judgment the public convenience and welfare will be substantially served or the appropriate use of neighboring property will not be substantially or permanently injured, the board of adjustment may, in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, determine and vary the application of the regulations herein established in harmony with their general purposes and intent. * * *" Denver Municipal Code, p. 1065, §2190B.

The whole controversy was tried before the Board of Adjustment, which is the tribunal created by the charter and ordinances of the city and vested with the exclusive power to determine the issues here presented, and after full and complete hearing thereof the action of the building inspector was affirmed, the application for variance was denied, and the following resolution was adopted:

"Whereas: The applicant, A. D. Jones, filed on January 6th, 1947, an application for a permit to remodel and convert the present 1½ story garage and former stable located at the rear of the premises known as #1011 Pennsylvania Street into an office building to be used by said applicant as a real estate office, and

"Whereas: Said application having been filed by the said A. D. Jones, a public notice having been given and public hearings having been held, at which hearings all interested persons desiring to be heard were heard, and

"Whereas: Applicant proposes to maintain in said building a real estate office, and proposes to employ several persons in the conduct of the real estate business, and

"Whereas: It is the opinion of the Board after hearing statements made by applicant concerning the proposed use of the premises, and after making an examination of applicant's proposed floor plans for said building, that said use would be a business use in Section 4, Business District Uses, of the Zoning Ordinance and the building would be an office building as provided in par. (2) of Section 4, and

"Whereas: Said use would not be a use authorized under paragraph (3) Office, of Section 3 D, Residence 'D' and Residence 'E' Districts, and would not be an accessory use to a residence as provided in Section 7 of the Zoning Ordinance which provides in part as follows —'A store, trade or business shall not be permitted as an accessory use, except that the office of a physician, dentist, surgeon or other professional person located in a dwelling or apartment occupied as a private residence by such physician, dentist, surgeon or other professional person may be authorized, and except a customary home occupation located in a dwelling or apartment used as a private residence if it is incidental to such residential use, may be permitted provided there are no employed

assistants in any way connected with the operation of such home occupation', and

"Whereas: Applicant's proposed use would be a business and not a customary home use, within the meaning and intent of Section 7 of Article II Use District Regulations of the Zoning Ordinance, as applicant proposes to remodel the building into an office building and also proposes to employ salesmen and office help for the conduct of such business, and

"Whereas: Applicant's proposed business use, viz: Real Estate Office, would be located in a Residence 'D' Zone and not in a Business Zone, and in the judgment of the Board the intrusion of such use into said Residence 'D' District would be detrimental and injurious to adjacent and neighboring residential properties, and the granting of a permit to applicant to maintain a real estate office as is proposed in the instant case would be contrary to the intent and purposes of the Use District Regulations of the Zoning Ordinance and a violation of such regulations, and

"Whereas: It is the opinion of the Board, after due consideration of the facts, that no reason exists to grant a variance to applicant by reason of unnecessary hardship within the meaning and intent of Section 7 of Section 219-A of the Charter of the City and County of Denver, now

"Therefore be it Resolved: That the application be and the same is hereby denied and that the action of the Chief Building Inspector be and the same is hereby sustained."

In this court's opinion reversing the findings of the Board of Adjustment and the trial court, it is said that the questions to be determined here are "First: Was the petitioners' contemplated use of the premises in question as a real-estate office, in which a stenographer and several salesmen were to be employed, a use permitted under the provisions of section D (3) of the zone ordinance?" and, "Second: Did the remodeling

contemplated by petitioners, considered with the proposed use of the entire building by them for office purposes, amount to the erection or structural alteration of a building arranged, intended or designed for an office building within the meaning of section 4 of the zoning ordinance?"

With all due respect to the author of the majority opinion and concurring justices, the above questions do not present the issue before this court. As I view it, the sole and only issue before us is whether or not the Board of Adjustment in the first instance, and the trial court in the second, had any evidence before them which justified their findings and conclusions. It is not a question as to whether we agree with the trial court or the board, but purely one as to whether there was any basis for their decisions.

The trial court, while not obliged to do so, tried the case de novo, and reached the same conclusion as did the Board of Adjustment. Its findings are as follows:

"It is the duty of the Board of Adjustment, under our form of government and various ordinances, to administer the Zoning Ordinances of Denver as a whole in the most reasonable manner possible. The ordinances lay out certain boundaries of districts and provide specifically what may be done with property within these various districts, and the Zoning Board, except in certain instances, where it may exercise its discretion and grant exceptions, has no right, power or authority to change the boundaries, or change the classifications as fixed by the ordinance. That authority lies with the council. So, in the main, the Board of Adjustment must take the ordinance as it finds it. One of the most definite points of cleavage between uses of property is the classification of residence property, on the one side, and business property on the other. The particular ordinance involved in this case is the residence district ordinance, and involved in it is a permissive use of property as an office.

"The Board has held that the use to which the petitioner wishes to devote his property is a business use, and therefore not permitted under the ordinances. The Board has also held as a fact that the petitioner's application is for the construction of an office building, a use and activity not permitted by the ordinance.

"The question this court must now determine is whether or not the Board, in its finding and in its action in denying the permit for those reasons, was within its power and authority, or was not. It seems to me that, in construing the ordinance, especially the use of the word 'office' in that ordinance, the Board was confronted with this situation: that if, in their opinion, the applicant was going to use the building as a business office, and if it were permitted, then the Board, in effect, would be eliminating the boundary line between Residence 'D' and 'E' Zones and Business Zones, and the Board would be immediately flooded with applications for offices of all kinds, some business and some not, and having permitted one building to be used as a business office, it would be difficult for it, on the next application, to deny a similar use.

"In my judgment, the activity of the petitioner here is a business activity. He said he is not in business; he claims he is engaged in an activity serving the people, and that that is not business. One of his counsel said it is, the other said it is not. In my judgment his activity is strictly a business activity; he is in the business of real estate, selling, renting, and so forth. He regards it as a business undoubtedly, and he probably makes a very good living at it. It certainly is a business, and the use to which he intends to devote this property, if permitted to do what he wants to do, is in my judgment a business use. A hotel is a business, of course; and even these other permitted uses in this particular district, as mentioned by the ordinance, such as boarding houses and rooming houses, can be designated as businesses. But the point is, they are definitely and specifi-

cally permitted by the ordinance, and the unqualified use of the word office in the ordinance does not necessarily mean that any office should be permitted.

"It seems to me, in this case, that where the evidence before the Board, by way of application, testimony and statements, showed that the use to which the applicant wished to devote his property, while permitted on the face of it, was also certain to result in a use which was not permitted, then the Board had the right to construe that ordinance as it did here.

"Counsel says that an office building is one that is divided into various suites of offices, and that this is simply one building to be used by one company; therefore, it is not an office building in the true sense of the word. If that argument is carried to a logical conclusion, then a large corporation, having two or three hundred people in its office, could construct a building with enough offices to house its entire office force, and because it was not divided into various suites for rental to the general public, it would not be an office building. I think that particular argument, as to that feature of the case, is not tenable.

"In my judgment the action of the Board in this case must be approved and affirmed in all respects. The net result of granting this permit, as I see the evidence which was before the Board at the time it acted on this application, would have been the granting of a permit to conduct a business from an office building in a Residence 'D' zone, which clearly was not authorized by the ordinance. The action of the Board in denying the application for variation was clearly within the discretion of the Board, and whether it is in the issues here or not, whether petitioner claims an abuse of discretion or not, the Board's conduct and action in denying that application was, in my judgment, justified and should be and is affirmed.

"The rule to show cause why the permit should not issue is discharged. The petition for writ of mandamus

438

directed to the Building Inspector, requiring him to issue the permit, is denied and the petition dismissed. The action of the Board of Adjustment generally, in connection with the application of the petitioner here, is approved and affirmed in all respects."

I am firmly of the opinion that the judgment of the trial court should be in all respects affirmed.

MR. JUSTICE JACKSON and MR. JUSTICE ALTER concur in this dissent.