Mr. Justice Moore
delivered the opinion of the Court.
We will refer to plaintiffs in error as the leaseholders or by name. Defendants in error will be referred to as plaintiffs in those instances where all of them are included in the reference, and as Board of Agriculture or Land Commissioners where the reference is to only one of said agencies.
There were no controverted issues of fact presented in the trial court. They are all admitted and raise a single question of law as to whether certain oil and gas leases executed by the State Board of Land Commissioners are valid. The trial court adjudged that the leases were void and the leaseholders seek review by writ of error. Uncontroverted facts are as hereinafter set forth.
By Act of Congress adopted April 4, 1910, 36 Stat. 274, about 6,000 acres of land in La Plata county, with certain improvements thereon, were granted to the State of Colorado by the United States. The land is generally known as the Fort Lewis lands. Section 5 of said statute provides in part:
“There is hereby granted to the State of Colorado, upon the terms and conditions hereinafter named, the property known as the Fort Lewis School, including the lands, buildings, and fixtures pertaining to said school: Provided, That said lands and buildings shall be held and maintained by the State of Colorado as an institution of learning, and that Indian pupils shall at all times be admitted to such school free of charge for tuition and on terms of equality with white pupils * * * .”
*161 During the year 1957 various oil and gas leases were executed by the Land Commissioners, and the leaseholders above named became the assignees of one or more of the leasehold interests, or were the original lessees named therein. Insofar as related to the question presented, it makes no difference whether the leaseholders are original lessees or assignees.
The Board of Agriculture contests the validity of the leases which are involved in this controversy, by reason of the following legislative enactments:
“School at Fort Lewis. There is hereby established at the Fort Lewis school in La Plata county a school of agriculture, mechanic arts and household arts upon the grounds heretofore accepted by the governor of the state of Colorado, * * C.R.S. ’53, 124-14-1.
“Part of agricultural college system. The state board of agriculture shall take and assume control of the lands, buildings and equipments at Fort Lewis School, now owned and held by the state, and the lands, buildings and equipment shall be a part of the agricultural college system of the state, and shall be controlled and managed under the same laws, rules and regulations by the state board of agriculture as the Colorado Agricultural and Mechanical College; provided, that Indian pupils shall at all times be admitted to such school free of charge for tuition and on terms of equality with white pupils.” 124-14-2.
* * *
“Development of natural resources. The state board of land commissioners and the state board of agriculture are hereby authorized and directed to develop such coal measures, mineral deposits and oil structures under lease executed jointly, and providing for such statutory royalties or other rentals as may be agreed upon, and wherein the obligations assumed by the state of Colorado shall be faithfully kept, and mining or drilling operations be not permitted to interfere with the con *162 duct and operation of the Fort Lewis School.” 124-14-9.
“Leasing of mineral lands. Applications for leases of the coal measures, mineral deposits and oil structures shall be made to the state board of land commissioners, which board, with the consent and approval of the state board of agriculture, shall execute such leases as required by law, and all rentals and royalties from such leases shall be certified to the state treasurer and credited to the permanent endowment fund designated in section 124-14-8.” 124-14-10.
The State Board of Land Commissioners is an agency of the State of Colorado created by Article IX, of the state constitution. In pertinent part sections 9 and 10 of said Article read as follows:
“Section 9. State board of land commissioners. The state board of land commissioners shall be composed of three (3) persons to be appointed by the governor, with the consent of the senate, who shall have the direction, control and disposition of the public lands of the state under such regulations as are and may be prescribed by law, * * *.
“Section 10. Selection and control of public lands. It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or other disposition of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law; and in such manner as will secure the maximum possible amount therefor. * * *” C.R.S. ’53, 112-3-13 provides:
“Leases — rental — mineral lands. The state board of land commissioners may lease any portion of the land of the state at a rental to be determined by it, except as provided in section 112-3-18. The lessee shall pay the annual rental to the state board of land commissioners, who shall receipt for the same in the lease. Upon receiving such annual rental, the state board shall trans *163 mit the same to the state treasurer, as provided by law, and take his receipt therefor. If stone, coal, oil, gas, or other mineral not herein mentioned be found upon the state land, such land may be leased for the purpose of obtaining therefrom the stone, coal, oil, gas or other mineral, for such length of time, and conditioned upon the payment to the state board of such royalty upon the product as the state board of land commissioners may determine.”
It is admitted that the Board of Agriculture did not join as lessor in any of the leases in question, and that said board did not consent thereto or otherwise approve or ratify the same, as allegedly required by C.R.S. ’53, 124-14-9 and 124-14-10, above quoted.
As ground for reversal of the judgment it is contended that the trial court erred “in sustaining the right of the legislature to require Agriculture Board consent” to the issuance of the leases. It is argued that the lands included in said oil and gas leases are public lands which by the Colorado Constitution are subject to exclusive disposition by the Land Commissioners.
The attorney general narrows the issue for determination by the following statement which we quote from his brief:
“* * * we wiH concede that if the Fort Lewis School lands are ‘public lands’ over which the Board of Land Commissioners has absolute control under the Constitution, then the statutory provisions in question vesting the control of said lands in the Board of Agriculture and requiring the consent and approval of that agency and its joinder with the State Board of Land Commissioners in the leasing of said lands are unconstitutional and void. * * *” He argues that:
“It is the contention of plaintiffs that the Fort Lewis School lands are not ‘public lands’ over which the Board of Land Commissioners has exclusive jurisdiction under sections 9 and 10 of article IX of the Colorado Consti *164 tution, and that the provisions of C.R.S. ’53, 124-14-2, which vests the control and management of the Fort Lewis School lands in the Board of Agriculture, C.R.S. ’53, 124-14-9, which requires the joinder of the Board of Agriculture with the Board of Land Commissioners in the execution of any oil and gas lease covering the Fort Lewis School lands, and C.R.S. ’53, 124-14-10, which requires the consent and approval of the Board of Agriculture before said lands may be leased for oil and gas development purposes, are valid and constitutional.
Decisions of courts of last resort are cited in support of the proposition that the words “public lands” are not always used in the same sense and their true meaning must be determined by the context in which they are used. It is argued that “special purpose” lands are not “public lands” within the constitutional provision quoted above. United States v. Blendaur, 128 Fed. 910; United States v. Bisel, 8 Mont. 20, 19 Pac. 251.
In the instant action we find it unnecessary to define “special purpose lands,” “school lands,” or “public lands.” In unmistakable terms the constitution specifically describes the lands which shall be subject to disposition by the Land Commissioners. They are “all the lands heretofore or which may hereafter be granted to the state by the general government.” (Article IX, Section 10, Colorado Constitution.) The “general government” can only mean the United States of America. The lands included within the leases, being lands “granted to the state by the general government” are therefore lands concerning which the Land Commissioners have exclusive powers of disposal. It does not lie within the power of the General Assembly to place limitation or qualification upon the exercise of that power. In Re Leasing of State Lands, 18 Colo. 359, 32 Pac. 986. The Land Commissioners alone have the constitutionally imposed duty to provide for the * * sale or other *165 disposition” of such lands, “under such regulations as may be prescribed by law.”
No one contends that the statutory requirement of approval by the Board of Agriculture is a “regulation.” It is admitted that the authority of the legislature to adopt “regulations” governing the sale or disposition of the said lands is not involved in this dispute.
We think it sufficient answer to the argument of the attorney general to direct attention to the language of this court in People ex rel. v. Hinderlider, 98 Colo. 505, 57 P. (2d) 894, and quoted with approval in Jones et al. v. Board of Adjustment of the City and County of Denver, 119 Colo. 420, 204 P. (2d) 560, in which it was said: “* * * Where the language used is plain, its meaning clear, and no absurdity is involved, Constitution, statute or contract, must be declared and enforced as written. There is nothing to interpret.”
The judgment is reversed and the cause remanded with directions to enter judgment in favor of the leaseholders.
Mr. Justice Pringle not participating.