No. 14,561.

PEOPLE EX REL. GROMMON *v.* HEDGCOCK, BUILDING INSPECTOR.
(104 P. [2d] 607)

Decided June 24, 1940. Rehearing denied July 24, 1940.

Mr. JOHN H. GABRIEL, Mr. CLIFFORD W. MILLS, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. ROBERT J. KIRSCHWING, Mr. HARRY C. RIDDLE, for defendant in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS is an action in mandamus to compel the issuance of a permit for the construction of a bungalow court in a "Business B" district in Denver. We shall hereinafter refer to plaintiff in error as relator, and to defendant in error as respondent or city.

Respondent refused to issue the permit, his refusal being based upon a ruling by the board of adjustment requested by him, and denied the application of relator upon the ground that to grant it would be contrary to the provisions of section 24B of the zoning ordinance of the City and County of Denver, and for the reason that the intended use of the proposed "bungalow court" would

place it in the classification of an "automobile tourist camp." Shortly thereafter, in a final notice of denial to relator, respondent again gave section 24B as the basis for his action. The pertinent parts of that section are as follows: "B. Exceptions Under Specific Rules. When in its judgment the public convenience and welfare will be substantially served or the appropriate use of neighboring property will not be substantially or permanently injured, the Board of Adjustment may in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, determine and vary the application of the regulations herein established in harmony with their general purposes and intent as follows. * * * Permit the location in any use district of * * * automobile tourist camp, * * *. All of the above uses subject to such regulations as to maintenance of premises and conditions of operation as may in the judgment of the Board of Adjustment be appropriate."

The trial court found that the structure proposed to be erected by relator, and for which the permit was sought and refused, was in fact an "automobile tourist camp," giving as reasons for such finding that the design and facilities thereof were more easily adapted for transients than for permanent tenants; and the further fact that relator and his witnesses "say that the place would have to be rented to transients to pay, or if it were rented to transients it would pay fifty per cent better." Judgment of dismissal based upon this finding was duly entered.

Relator, seeking reversal, assigns error on various grounds, which may be summarized in one sentence: That it was respondent's duty, under the zoning ordinances of Denver, to issue to relator a permit for the construction of a bungalow court in a "Business B" district.

Before considering the issues, we first should determine the scope of this inquiry. The action is brought to

compel respondent building inspector, not the board of adjustment, to issue a permit for the construction of a bungalow court. We are, therefore, concerned only with the legality of his action; his power, and not the power of the board, is involved. Respondent, and not relator, invoked the power of the board under section 24B, supra. If, however, said section is material to the issues, its constitutionality is challenged. No constitutional question as to the zoning ordinances generally is here involved.

We first consider respondent's power or duty independent of section 24B. The zoning ordinance before us divides the city into various districts. The most restricted district is that known as "Residence A." The restrictions of use as imposed by the ordinance are progressively fewer, in the following order: "Residence B, C, D and E" districts, "Business A, B and C" districts, "Commercial A, B and C" districts, "Industrial A and B" districts. In "Industrial B" districts there are practically no restrictions. Relator relies, primarily, on article II, section 3B and section 4 (8) of the zoning ordinance, for relief. It is admitted that under section 3B, the erection of a multiple dwelling, hotel, dormitory or a boarding house or rooming house is a permitted use in a "Business B" district. The pertinent part of section 4 is as follows:

"Sec. 4. In a Business 'A', Business 'B', or Business 'C' District no building or premises shall be used, and no building shall be erected which is arranged, intended or designed to be used, for other than one or more of the following uses:

\* \* \*

"8. Any use not provided for as a permitted use in any other district, provided such use is not noxious or offensive by reason of the emission of dust, odor, smoke, gas, fumes, noise or vibration."

There is no definition in the ordinance of a bungalow court, or an automobile tourist camp. The

phrase "automobile tourist camp" appears only in section 24B, supra. Respondent defined a bungalow court as "a group of individual dwellings built around an open court and heated from a central plant." Another witness testified that, in his opinion, a bungalow court is a hotel. That there has been a progressive development since the amendment of section 24B within the past five years to accommodate automobile tourists cannot be questioned. Since the city has not defined what is meant by "automobile tourist camp," as distinguished from "bungalow court," this time element should receive consideration in determining whether a bungalow court is prohibited by the zoning ordinance. The designations "camp," as it was known at the time of the inclusion of this word in said section 24B, and "court," as here proposed, do not necessarily mean the same thing when constitutional guaranties are involved. The development of accommodations for automobile tourists from a row of shacks, with no service other than a room with a bed, to the fine structures now appearing all over the nation, where guests are furnished with all of the accommodations of the most modern hotel, including space for the parking of cars, is, under the circumstances, too important to be ignored. This absence of a definition of "automobile tourist camps" becomes more important when we contemplate what is now permitted in the way of construction in a "Business B" district. It is admitted that hotels are permitted. The building code of the City and County of Denver defines a hotel as follows: "Hotel is any building containing ten or more rooms intended or designed to be used, or which are used, rented, or hired out to be occupied, or which are occupied for sleeping purposes by guests." An ordinance of the City and County of Denver, adopted to regulate hotels and rooming houses, is as follows: "A hotel, lodging house, rooming house, or other place where transients are accommodated, within the meaning of this ordinance, shall be any place in which four or more rooms are rented

out." The proposed structure here in question would have a central building, with a central heating plant, surrounded by sixteen apartments, with bath, kitchenette, living room, and bedroom in each, available to permanent tenants and transients.

Section 29(13), article VI, of the zoning ordinances, defines a multiple dwelling as follows: "A 'multiple dwelling' is a building arranged, intended or designed to be occupied by three or more families or by three or more individuals or groups of individuals living in * * * apartment hotels."

Section 29(10), article VI, defines a "family," as used in the above definition, to be "any number of individuals living together as a single housekeeping unit, and doing their cooking on the premises."

That transients are included in these definitions under hotels as well as rooming houses is clear. There is little, if any, difference in the use of a hotel or multiple dwelling and a bungalow court. An automobile tourist may desire, and is entitled to, all of these accommodations, no matter by what name they may be designated. At no time did relator change the name of his project in his application from "bungalow court" to "tourist camp." True, he testified that it was his intention to use the structure for permanent tenants; that if in the summer time he had any vacancies he would rent to tourists; and that if his business were confined to permanent tenants the income probably would be about half of what it would be if he rented to transients in the summer. Such accommodations are not different from those furnished by hotels, multiple dwellings or rooming houses, particularly as they relate to transients. Even respondent, in one of his exhibits, designates the proposed structures as an apartment and hotel. "The power to limit the use of real estate in particular districts must be expressly granted or rise by necessary implication." 43 C.J., p. 341, §369. If and when relator does conduct an automobile tourist camp, as and when defined by the

city, it then will be sufficient time to determine whether the use he is making of it violates the ordinance under consideration or any other, and proper legal steps may then be taken to prevent any such violation. We do not here attempt, and it is not our province, to define an "automobile tourist camp." That is a legislative function. Nor do we say that a legislative agency cannot prohibit the use of property for the conduct of such a camp, which also is a matter to be resolved by the law-making body. Until the legislative agency defines and prohibits such camps, there is, in our opinion, no legal basis—the alleged basis being too doubtful—under which one may be deprived of the legitimate use of property without violating constitutional guaranties in that respect. The police power, which is the legal basis for zoning legislation, must constantly be reconciled with the legitimate use of private property, in harmony with such guaranties.

An even more serious question is presented when we consider section 4, supra. This section requires the issuance, in a "Business B" district, of a permit for the erection of any structure intended or designed to be used for "* * * any use not provided for as a permitted use in any other district * * *." Under this section it makes no difference whether we call the proposed structure an automobile tourist camp or a bungalow court. There is no provision for either as a permitted use in any other district. It was not under authority of this section that a permit was denied by respondent. The sole basis for his action was section 24B, supra. Moreover, the trial court made no findings under the proviso in section 4, that the use of the proposed structure would be "noxious or offensive by reason of the emission of dust, odor, smoke, gas, fumes, noise or vibration." Its findings relate solely to section 24B. Evidence was introduced by respondent to sustain his answer, based on section 24B, as to noise, which it is claimed would in-

juriously affect the value of neighboring property, but such evidence had no relation to a noxious or offensive structure prohibited under the proviso in said section 4.

Since the action of respondent, the board of adjustment and the trial court, was based solely upon article II, section 4B, which we shall hereafter show has no application to the issues in this case, and was not predicated upon article II, sections 3B and 4B, the denial of the permit by respondent was arbitrary and unreasonable, in that it deprived relator of a legitimate use of his property not prohibited by any provision of the zoning law.

As already stated, the action of respondent in denying the permit was based solely on section 24B, and he, not relator, invoked the provisions of this section, which authorized the board of adjustment in a specific case, after hearing, to grant a permit to erect any of the use structures named therein, under certain conditions and safeguards. The purpose of this section is to give the board some discretion to act, where enforcement of the general restrictions of the zoning ordinance would work a hardship upon the owner of a specific piece of property within a restricted district. No application for waiver of restrictions, as applied to the proposed structure, was made by relator, and until he invokes the provisions of the section, he is not bound thereby. He insists that respondent was required to issue him a permit for a bungalow court, regardless of section 24B. In this he is correct. The only question before the court was whether the zoning ordinances required the issuance by respondent of the permit. The permit must issue unless properly refused on the ground specified, in this instance, section 24B. This section, as heretofore stated, was and is inapplicable to this proceeding. In view of this conclusion, we deem it unnecessary to pass upon the constitutionality of the challenged section, and we decline to do so.

The judgment is reversed and the case remanded, with directions to make the alternative writ peremptory.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE YOUNG, MR. JUSTICE KNOUS and MR. JUSTICE BURKE concur.

MR. JUSTICE BAKKE dissents.