ANTRIM ET AL. *v.* HOHLT ET AL.

[No. 18,243.   Filed October 23, 1952.]

*Thomas M. Scanlon* and *Lewis C. Bose,* both of Indianapolis, *Barnes, Hickam, Pantzer & Boyd* (of counsel) all of Indianapolis, for appellants.

*Louis A. Weiland* and *Thomas E. Garvin,* both of Indianapolis; *Edward H. Knight,* Corporation Counsel; *Michael B. Reddington,* City Attorney and *Adolph G. Emhardt,* Assistant City Attorney, for appellees.

BOWEN, J.—This is an appeal from a judgment of the Superior Court of Marion County in an action brought by appellants for a writ of certiorari to review a decision of the Board of Zoning Appeals of the City of Indianapolis. The Board of Zoning Appeals granted a variance from the zoning ordinance of the city to authorize the construction of an 83-unit apartment project in an area restricted by the zoning ordinance of the city for the construction of single and two-family dwellings. The appellants owned houses adjacent to the land for which the variance was granted, and were the petitioners in the action in the Superior Court of Marion County.

The appellees in this action are one E. F. Hohlt who asked for the variance, the Board of Zoning Appeals, its chairman, the City of Indianapolis, and the persons who own the real estate for which the variance was granted.

Issues were joined on appellants' petition for certiorari in the court below, and the return of such writ filed by the Board of Zoning Appeals. The Superior Court determined that the action of the Board of

Zoning Appeals was proper and affirmed the decision of the zoning board granting the variance.

The appellants filed a motion for a new trial which was overruled and this appeal followed.

The single error assigned for reversal is the action of the court in overruling appellants' motion for a new trial, the grounds of which motion were that the decision of the court is not sustained by sufficient evidence and is contrary to law.

From the record it appears that the appellee, E. F. Hohlt, filed his request for permission to construct apartment buildings having 83 units with accessory off-street parking on the premises known as 3650-3668 Central Avenue. Permission to construct such buildings was denied by the building commissioner on the ground that the same would be in violation of the building ordinance. Following the ruling of the building commissioner, Hohlt filed an application for variance from the requirements of the zoning ordinance, which set forth that the three apartment buildings in question were to be constructed upon a lot 400 feet by 302 feet, fronting on Central Avenue, the buildings being each of three floors of brick veneer construction and making provision for such off-street parking for sixty automobiles.

At the hearing before the board, minutes of the hearing were entered in substance as follows: The board gave consideration to the petition of E. F. Hohlt requesting variance of use, area and rear yard requirements to permit the construction of apartment buildings having 83 units, in accordance with submitted plans, and with accessory off-street parking. Mr. Louis Weiland, attorney, appeared to represent the petition and submitted copies of "pertinent data" to the board members and interested persons appearing, and dis-

played a sketch of the proposed project. A large group of remonstrators appeared voicing their objections to the proposed introduction of an apartment house into the neighborhood, stating that it would change the character of the district, that it would detract from the value of the existing residential properties, that the parking area would be a source of annoyance to the Washington Boulevard property owners, and that the proposed use would over-tax the present sewer, which even now overflows. Mr. C. Titus Everett, attorney, appeared as representative of Mr. David Sluss, whose property adjoins the premises involved on the west, and voiced objections. Mr. Antrim, 3620 Central Avenue, voiced his objections, stating that, regardless of the area provided for off-street parking, many cars would be parked in front of the building, which would increase the traffic hazard. A statement of disapproval was presented and filed from Mrs. A. E. Baker, 417 E. 37th Street. "Affidavits of publication and serving of notices having been filed and made a part of the case, the Board, being fully advised in the matter, finds that this proposed project would not be detrimental to the public welfare and would not substantially and permanently injure the appropriate use of neighboring property." The board thereupon approved the petition.

The assignment of error presents, among others, the legal proposition whether the variance sought was such a variance as required an amendment of the master zoning plan by the City Council.

The sections of the zoning ordinance in question under which the present variance must be justified, and the sections which permit the board to relax the provisions of the zoning ordinance are sections 22 and 23. Under Section 22, the Board may grant a variance when: First, there are practical

difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance: Second, the variance is in harmony with the general purpose and intent so that the public health, safety and general welfare may be secured and substantial justice done. Under section 23, the board may grant the exception from the district regulations when the following facts exist: First, such action is in harmony with the general purpose and intent of the regulations: Second, the exception is in general keeping with and appropriate to the use and buildings authorized in any district or existing on neighboring property. The law is well settled that the board's power to grant variances or exceptions is strictly limited to the situations provided by statute and in the ordinance. *O'Connor* v. *Overall Laundry, Inc.* (1934), 98 Ind. App. 29, 183 N. E. 134; *Anderson Lumber & Supply Co.* v. *Fletcher* (1950), 228 Ind. 383, 89 N. E. 2d 449.

The record in this case does not present a case under the hardship provisions of Section 22. Section 23 has the provision which requires that the variance and exception be in general keeping with and appropriate to the uses or buildings authorized in any district or existing on neighboring property. Under both sections, any variance is required to be in harmony with the general spirit and intent of the ordinance. Any variance which so changes the character of an area so that it is not in harmony with the general purpose and intent of the zoning ordinance must be effected by an amendment of the zoning ordinance of which the master plan is a part. *City of Indianapolis* v. *Ostrom Realty & Construction Co.* (1932), 95 Ind. App. 376, 176 N. E. 246; *Lee* v. *Board of Adjustment* (1946), 226 N. C. 107, 37 S. E. 2d 128; 168 A. L. R. 1, et seq.

Amendments to the master plan are made as a result of preliminary investigation and final adoption of the city council. This procedure is provided for by the planning and zoning act. Acts of 1947, Chapter 174, §§ 42, 62-4; Burns' 1951 Replacement, §§ 53-742, 53-763, 53-765. And the legislative intent is clear that where any considerable change is to be made, it must be made by ordinance. The ordinance in the instant case provides for two separate use districts along with other classifications. Class U1 is a classification of dwelling houses. Class U2 provides for apartment houses and apartment hotels. It is clear that in a proper case the Board of Zoning Appeals would have power to grant a variance and permit the construction of a building in a residential area which would not constitute a considerable change in the area district and which would be in harmony with the general purpose and intent of the residence uses in such area district. However, in the instant case, the master plan calls for a residential area between 34th and 38th Streets. The courts have been very careful in construing comprehensive zoning ordinances to protect the rights of the municipality in setting up single dwelling areas and in defining residential areas. A single family restriction is a valid zoning regulation since it bears substantial relation to the public safety and to the general welfare. The quiet of natural surroundings and vegetation in a residential district as opposed to the increased risks and annoyances of various natures by reason of a change from a single and two-family district to an area of apartment buildings bears substantial relationship to the public safety and general welfare as to constitute a valid zoning regulation. Yokley, Zoning Law and Practice, § 60, p. 84; *Sullivan* v. *Anglo-American Inv. Trust*

(1937), 89 N. H. 112, 193 Atl. 225; *Cochran* v. *Preston* (1908), 108 Md. 220, 70 Atl. 113.

From the records in this case, the board knew the existing uses in the district in question under the zoning ordinance, that the same was a dwelling house district where the construction of apartments by the very terms of such ordinance were forbidden. The zoning regulations established an area where 7,500 square feet of land must be provided for each family. The real estate in question for which variance was sought is bordered by ten separate parcels of land, each developed by single family dwellings. From the concentration of business and apartments at 34th Street to the concentration at 38th Street, there are 39 single family dwellings and four 2-family dwellings. Between 34th and 38th Streets on the west side of the real estate in question there are some apartments, but predominantly residences on Washington Boulevard between 34th and 38th Streets. In this area there are four apartments, none of which has a frontage in excess of sixty feet or a frontage greater than many dwelling houses in that area. In this area under the guise of a variance, the appellee sought to erect apartment buildings with a 400 feet frontage on Central Avenue at a cost of approximately three-quarters of a million dollars, consisting of three apartment buildings with a total of 83 living units, fifty-nine of them two-bedroom units and the rest one-bedroom units. Instead of 7,500 square feet per family, each family accommodated in the living quarters in the proposed apartments were to have only 1,400 square feet of ground. Parking lots were to be put in the northwest and southwest corner of the real estate abutting the land facing Washington Boulevard, Central Avenue, and 37th Street.

It is clear from an examination of the record and exhibits in this case that the change sought by way of variance to which the area of the district in question from a Class U1 dwelling house district to a Class U2 apartment house district, was of such extent as to change the character of the district in question. *Easter* v. *Mayor and City Council* (1950), (Md.) 73 A. 2d 491; *Van Meter* v. *H. F. Wilcox Oil & Gas Co.* (1935), 170 Okla. 604, 41 P. 2d 904; *Lee* v. *Board of Adjustment, supra; Otto* v. *Steinhilber* (1939), 282 N. Y. 71, 24 N. E. 2d 851; *Young Womens' Hebrew Assn.* v. *Board of Standards and Appeals* (1935), 266 N. Y. 270, 194 N. E. 751; *Levy* v. *Board of Standards and Appeals* (1935), 267 N. Y. 347, 196 N. E. 284.

The legislative body could well have amended the master plan and made provision for the establishment of an apartment house district in the area in question, but the very fact that the city council has not seen fit so to do, and the fact that such body by its master zoning plan prohibited the construction of apartments in this area, considered in connection with the facts and circumstances of the existing property uses as shown by this record, lend substantial force to the conclusion that the legislative intent exists to require that if the substantial character of such residential district was to be changed by the erection of apartment buildings, particularly of the character and extent of the buildings sought to be erected in the instant case, that it would necessitate an amendment of the master plan by the city council. The zoning board does not have the power to grant variances which constitute a substantial change in the master zoning plan. It appears to this court that the changes sought by way of variance constitute substantial change in the master plan, and the board was without power to make such

change. Bassett on Zoning, p. 201; *City of Indianapolis v. Ostrom Realty & Construction Co., supra. Lee v. Board of Adjustment, supra.*

To permit Board of Zoning Appeals to change substantially the master zoning plans in use districts created by zoning ordinance would constitute an improper delegation of powers of the legislative body of the municipality and if Boards of Zoning Appeals were held to have such power it would seem useless and unnecessary for the City Council to adopt a zoning ordinance in the first instance.

While the letter and spirit of the zoning law in providing for Boards of Zoning Appeals makes provision for a certain amount of flexibility to prevent hardships and to permit reasonable variations of land use in order to provide for the proper economic growth of the community and at the same time to preserve the rights of ownership in land, however, there is a middle ground between an economic straight jacket of land use and the substantial change of an area dedicated to homes and residences under a proper exercise of the police power. It does not appear that the variance sought in the instant case by reason of its extent and nature comes within that reasonable middle ground.

Other legal propositions are asserted and presented in the well-prepared briefs filed by eminent and able counsel in this case, but in view of the conclusions we have reached, we do not deem it necessary to unduly extend this opinion to discuss them.

For the reasons given herein, the trial court erred in its decision.

Judgment reversed.

Royse, P. J., not participating.

Note.—Reported in 108 N. E. 2d 197.