No. 19,023.

CITY AND COUNTY OF DENVER, ET AL. *v.*
REDDING-MILLER, INC., ET AL.
(347 P. [2d] 954)

Decided December 14, 1959.   Rehearing denied January 11, 1960.

Mr. DONALD E. KELLEY, Mr. EARL T. THRASHER, Mr. HANS W. JOHNSON, for plaintiffs in error.

Messrs. ROBERTSON & DANKS, Mrs. PATRICIA H. MALOY, for defendant in error, Redding-Miller, Inc.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

J. D. AREHART, Zoning Administrator of Denver, and

the City of Denver seek review by writ of error of a judgment entered by the district court affirming the holding of the Board of Adjustment of the City and County of Denver. This judgment granted certain variances under the zoning ordinance of the City and County of Denver, and strict compliance with said ordinance was not required.

The trial court dismissed the claim of the City and County of Denver on the ground that it had not participated in the proceedings before the Board of Adjustment, and hence was not a proper party. In so ruling, the trial court committed no error. *Denver v. Kuehn,* 132 Colo. 348, 290 P. (2d) 1114.

The variances applied for by Redding-Miller, Inc., related: (1) To the ratio of floor area to ground area as set forth in the ordinance; (2) a reduction of the space requirement between buildings; and (3) the amount of space to be devoted to the use of off-street parking. The holding of the trial court was that the Board of Adjustment had acted within the powers granted to it by the applicable ordinance in that its determination was based upon specific findings of fact and that it did not appear that there was abuse of discretion or excessive exercise of jurisdiction.

With reference to the variances granted in connection with requirements other than off-street parking, we agree with the conclusions drawn by the trial court. With reference to the question of off-street parking, our opinion in *Denver v. Denver Buick, Inc.,* announced December 5, 1959, fully disposes of the contentions of the parties on that subject.

The judgment is affirmed.

MR. JUSTICE SUTTON, MR. JUSTICE DAY and MR. JUSTICE DOYLE dissent.

MR. CHIEF JUSTICE KNAUSS concurring:

I concur in the foregoing opinion and desire to state

the following as an additional reason for affirmance of the trial court's judgment: The City and County of Denver and John D. McLucas, later succeeded by J. D. Arehart, entered this proceeding for the first time when the complaint herein was filed. The parties before the Board of Adjustment were Redding-Miller and any persons who objected to the variance which that board granted. In *Board of Adjustment v. Kuehn*, 132 Colo. 348, 290 P. (2d) 1114, we held that the Board of Adjustment could not appeal a judgment of the district court reviewing its decision. McLucas, appointed under an ordinance, is clearly an employee of the Board of Adjustment and in no position to prosecute an appeal from the decision of his superior, the Board of Adjustment. The latter is a creature of the Denver Charter and the Administrative officer appointed pursuant to an ordinance is in no better position to prosecute an appeal than would the administrative officer of this court in taking a decision of this court to the Supreme Court of the United States.

MR. JUSTICE DOYLE dissenting:

I respectfully dissent from that portion of the majority opinion which holds that the Board of Adjustment acted properly in granting variances to the defendants in error in respect to the maximum floor area provisions and the provisions regulating the space between buildings. In order to make clear my grounds for concluding that the Board's action was improper, it will be necessary to supplement somewhat the statement of facts as set forth in the majority opinion.

On April 29, 1958, Redding-Miller, Inc., applied to the Denver Department of Zoning Administration for permits to build several buildings on land situated between First and Second Avenues and Fillmore and Milwaukee Streets in Denver. This area is within a commercial de-

velopment which is known as the "Cherry Creek Shopping Center." Under a zoning ordinance of the City and County of Denver adopted November 8, 1956, the land in question is classified as B 3. The application was denied by the Zoning Department and thereafter Redding-Miller, Inc., applied to the Board of Adjustment for a number of variances from the requirement of the ordinance.

Under the ordinance definition of a B 3 district, the ratio of ground area to floor area of a building is 1 to 1. The land in question contains 92,280 square feet. The proposed buildings would have a floor area of 138,798 square feet or an excess square footage of floor area amounting to 45,518 square feet, or a variance of approximately 50%.

The second variance requested pertains to the ordinance requirement of off-street parking. In order to comply with the off-street parking requirement of the ordinance it would be necessary for Redding-Miller, Inc., to supply 200,277 square feet of space for this purpose. The application for variance from this requirement requested that the applicant be allowed to furnish 131,-456 square feet of off-street parking space leaving a deficiency of 68,821 square feet.

The third variance which Redding-Miller, Inc., sought involved the location of the buildings. Request was made to authorize reduction of the space requirement between buildings from the required 55 feet to 24 feet.

The main contention of the City can be summarized as follows: That the multiple variances granted by the Board of Adjustment were not in truth variances, but rather constituted an exercise by the Board of legislative power and were so substantial that they amounted to rezoning.

Another contention of plaintiff in error City and County of Denver was that the district court erred in ruling that it was not a proper party. On the other hand, Redding-Miller, Inc., has urged in this Court that

McLucas is not a proper party. The motion to dismiss the writ of error as to the City and County of Denver has been heretofore granted on the ground that it failed to participate in the proceeding before the Board of Adjustment and thus lacked standing in the district court and in this Court. Although the majority does not consider whether the zoning administrator, representing the public interests, can properly prosecute this writ of error, its determination of the merits of the case indicates a belief that the zoning administrator does have standing to seek review. See Sec. 219 G (3) of the Charter of the City and County of Denver. Cf. *Denver v. Kuehn,* 132 Colo. 348, 290 P. (2d) 1114, and cf. also Sec. 611.5-3 (1) (a) of the Ordinances of the City and County of Denver.

My disagreement with the reasoning of the majority opinion that off-street parking is unconstitutional is set forth in my dissent in *The City and County of Denver, et al. v. Denver Buick, Inc., et al.,* No. 18,699, decided December 5, 1959, and further comments on this are unnecessary. Since I would reverse the judgment of the district court and would uphold the ruling of the zoning administrator, I consider it necessary to give my reasons for this viewpoint.

The zoning ordinance has made specific provision for elaborate findings of fact by the Board of Adjustment and the plaintiff contends that this requirement has not been observed. The Board of Adjustment failed to comply with the requirements of the ordinance in this regard, but its action was not merely formally insufficient. It also exceeded its jurisdiction and abused its discretion in allowing the requested variances, and I shall address myself to the substantive question rather than the procedural one.

The Board of Adjustment does not possess an unlimited discretion with respect to the granting of variances. Sec. 611.6-4 (2) (a), Municipal Code. Specifications and standards are set forth there to guide the Board and to insure against substantial deviations from the general

purpose and plan of the zoning ordinances. These standards are as follows:

".6-4 (2) (a). * * * No variance shall be authorized hereunder unless the Board shall find that all of the following conditions exist:

".6-4 (2) (a) (a-1). That the variance will not authorize the operation of a use other than those uses specifically enumerated as Uses by Right for the district in which is located the property for which the variance is sought;

".6-4 (2) (a) (a-2). That, owing to exceptional and extraordinary circumstances, literal enforcement of the provisions of this ordinance will result in unnecessary hardship;

".6-4 (2) (a) (a-3). That the circumstances aforesaid were not created by the owner of the property and are not due to or the result of general conditions in the district in which the property is located;

".6-4 (2) (a) (a-4). That the development or use of the property for which the variance is sought, if limited by a literal enforcement of the provision of this ordinance, cannot yield a reasonable return in service, use or income as compared to adjacent conforming property in the same district;

".6-4 (2) (a) (a-5). That the variance will not substantially or permanently injure the appropriate use of adjacent conforming property in the same district;

".6-4 (2) (a) (a-6). That the variance will not alter the essential character of the district in which is located the property for which the variance is sought;

".6-4 (2) (a) (a-7). That the variance will not weaken the general purposes of this ordinance or the regulations herein established for the specific district;

".6-4 (2) (a) (a-8). That the variance will be in harmony with the spirit and purposes of this ordinance;

".6-4 (2) (a) (a-9). That the variance will not adversely affect the public health, safety or welfare."

The strict limitations within which the Board of Ad-

justment is empowered to act in various matters are apparent from a reading of the above provisions. The Board is authorized to issue a building permit notwithstanding that the application does not meet the strict letter of the zoning ordinance where observance of the strict letter would work an unreasonable hardship. It is contemplated, however, that there shall be observance of the basic purpose of the ordinance and it is assumed that the Board shall refrain from granting *substantial* relief which modifies the entire character of the area. These legislative limitations are in accord with traditional variance definitions found in the cases. *Rhyne, Municipal Law,* p. 855, §32-17, describes the meaning and purpose of variances as follows:

"§32-17. *Meaning and Purpose of Variances.* A 'variance' is the relief granted from the literal enforcement of a zoning ordinance by a board of appeals or adjustment (or, less frequently, by a municipal legislative body), permitting the use of property in a manner otherwise forbidden upon a finding that enforcement of the ordinance as written would inflict practical difficulty or unnecessary hardship on a property owner. On the other hand, an 'exception' is a departure from the general provisions of a zoning ordinance, granted by legislative process under express provision of the enactment itself, if certain unalterable facts or circumstances specified in the ordinance are found to exist by a zoning board considering either a direct application or an appeal from an administrative order enforcing the zoning ordinance.

"The power of a zoning board to grant variances under a zoning ordinance is intended to provide a necessary flexibility in the ordinance in exceptional cases; to guard against an unwarranted interference with the right of private property securing reasonable zoning; to minimize the acknowledged evils of 'spot zoning' by amendment of the zoning ordinance; and to afford a safety valve so that the strict enforcement of the ordinance

may not occasion unnecessary hardship to particular property owners. * * * "

In *People ex rel. Grommon v. Hedgecock,* 106 Colo. 300, 104 P. (2d) 607, the Court defines a variance as follows:

" * * * The purpose of this section is to give the board some discretion to act, where enforcement of the general restrictions of the zoning ordinance would work a hardship upon the owner of a specific piece of property within a restricted district. * * * "

In *Cross v. Bilett,* 122 Colo. 278, 221 P. (2d) 923, the Court made some further observations with respect to the purpose of variance provisions as follows:

" * * * that the purpose of that provision of the charter was not to provide for substantial changes in zoning districts for nonconforming uses which result in virtual rezoning of certain property therein, but, rather, to permit minor departure from the literal terms of the statute where justice so requires. As stated by the court in *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. (2d) 128, 168 A.L.R. 1:

" 'The plain intent and purpose of the statute is to permit, through the Board of Adjustment, the amelioration of the rigors of necessarily general zoning regulations by eliminating the necessity for a slavish adherence to the precise letter of the regulations where, in a given case, little or no good on the one side and undue hardship on the other would result from a literal enforcement.

" 'The board cannot disregard the provisions of the statute or its regulations. It can merely "vary" them to prevent injustice when the strict letter of the provisions would work "unnecessary hardship." ' * * * "

The note at 168 A.L.R. 1 which is cited in *Cross v. Bilett,* supra, is a very extensive one which collects hundreds of cases and analyzes the entire variance problem. The conclusion to be gleaned from a review of these cases is that the variance is to be granted only for the

purpose of relieving from hardship and only under conditions which will not change the basic character of the area. Its mission is to alleviate the hardship which results from the mechanical and sometimes unjust decisions of the zoning administrator who must deny the application for building permit where it fails to comply with the exact requirements of the law. If used sparingly and properly, this power to grant variances preserves the integrity of the area and at the same time eliminates injustice which flows from strict interpretation. See 168 A.L.R. pp. 21-23.

The B 3 District described in the ordinance 612.8-1 calls for a shopping center area. It contemplates a complex of retail stores. It does not embrace a plan which calls for a complex of office buildings such as that of Redding-Miller, Inc. The substantial deviations which were here granted are not variances, but rather, are legislative changes. This is apparent from the testimony of the Planning Director, Mr. George Nez:

"THE WITNESS: The floor area is excessive by the amount of 45,000' more or less. That is to say, this is roughly an overbuilding of fifty per cent over and above the amount this would be limited to by the standard. The standard says you can have an equal amount of floor area as your land area. You can arrange it in any shape you want, and we find around this property in this shopping area generally that there is compliance. In fact, all the other developments have been operating within the limits of floor area.

"That is the first one. The second one is parking. There is a deficiency there of roughly 68,000' below that which would be required under the ordinance, and again we find in other cases in this same shopping area, the Cherry Creek District, that there is compliance on parking, so that it would be inequity in relation to the other developments. The degree of parking deficiency is substantial. It isn't as though it were just a ten per cent deficiency. It runs about fifty per cent deficiency.

278

"And then finally, we come to the request for separation of buildings from each other as designed now, and we have a couple of tight spots where we have separation of only 24′ and 31′, respectively, which should be around 60′ separations between these buildings which have exposures and circulation around them. In other words, there's about a fifty per cent deficiency on the spacing. However, that deficiency can be remedied by design. I think it would be possible to cut out some of the separations and join these buildings, and then you don't have the problem of narrow gaps. You just solve it by eliminating the gaps altogether so that isn't what we would call extremely critical. In fact, we have laid out a design just as an illustration of the maximum that these people could build in terms of floor area balanced with adequate amount of parking that would have no deficiency on the spacing of buildings. We have that here if it is of any interest to you people later."

The very substantial deficiencies in ground area and parking space lead me to the conclusion that the requests which were here submitted to the Board of Adjustment do not qualify as variances under the zoning ordinance or under the legal conception of variances as established by court decisions. The Board of Adjustment was not granting relief with respect to minor hardship, but rather, was legislating so as to change the entire character of the area from what has been essentially a shopping center to a concentrated floor space office building scheme. This latter use, although not prohibited, would as proposed result in a general character change. See *Bacon v. Steigman,* 123 Colo. 62, 225 P. (2d) 1046; *Harte et al. v. Zoning Board of Review of City of Cranston,* 80 R.I. 43, 91 A. (2d) 33; *Adams et al. v. Zoning Board of Review of the City of Providence* (R.I.), 135 A. (2d) 357; *Antrim et al. v. Hohlt et al.,* 122 Ind. A. 681, 108 N.E. (2d) 197; *Van Meter et al. v. Wilcox Oil & Gas. Co. et al.,* 170 Okla. 604, 41 P. (2d) 904; *Stavola et al. v. Bulkeley et al.,* 134 Conn. 186, 56 A. (2d) 645; *Bray et al.*

*v. Beyer et al.,* 292 Ky. 162, 166 S.W. (2d) 290; *Yokley, Zoning Law and Practice,* Sec. 138, etc.; *Rathkopf, The Law of Zoning and Planning,* Chap. 41, p. 647, etc., and the cases there collected.

The record fails to reveal that there have been other like deviations in the Cherry Creek center. Therefore, to recognize the contention of Redding-Miller, Inc., that due to the present value of the land it can realize on its land investment only if it can proceed in the manner proposed would be unjust to the other property owners in the area, all of whom have complied with the B 3 zoning requirements. It seems to me that the Redding-Miller, Inc., argument itself points to the conclusion that the proposed changes are legislative rather than minor administrative variances.

In conclusion, therefore, it is my opinion that the off-street parking requirement is valid and that the action of the Board of Adjustment in this instance was contrary to both the letter and the spirit of the ordinance requirements. In my opinion the district court erred in affirming the rulings of the Board of Adjustment and thus the judgment of the district court should be reversed.

I am authorized to say that MR. JUSTICE SUTTON and MR. JUSTICE DAY join in this dissent.