CARL H. HAWKINS AND ESTHER M. HAWKINS *v*. CITY OF RICHMOND ET AL.

[No. 172A36. Filed August 31, 1972. Rehearing denied October 4, 1972. Transfer denied February 26, 1973.]

*George Rose,* of Indianapolis, for appellants.

*Jane Wynegar,* City Attorney, of Richmond, for appellees.

LOWDERMILK, J.—This appeal comes to this court on three issues, which were whether General Ordinance 1472-1953, a zoning ordinance for the City of Richmond, Indiana, (1) was a valid ordinance in view of the fact that the prepared Master Plan is alleged to not have been adopted; (2) whether the plaintiffs-appellants were entitled to an injunction enjoining the defendant-appellees from enforcing the ordinance, and (3) whether the plaintiffs-appellants are entitled to damages from the defendants-appellees.

The trial court entered judgment against the plaintiffs on all three issues, that the General Ordinance 1472-1953 met the requirements of the Planning and Zoning Act of 1947 and that said ordinance was no longer enforceable as it had been repealed, so an injunction could not issue, and thirdly, that the plaintiffs were not entitled to recover damages.

Plaintiffs-appellants waive specification 2 as to whether they were entitled to an injunction enjoining the defendants from enforcing the ordinance and do now waive their specification of error that the court erred in its ruling refusing to grant the injunction.

Plaintiffs-appellants purchased a lot in the Hunt Addition to Richmond, Indiana, and obtained a permit to build a house. At that time it was not required to secure a permit to build an open porch. The restrictive covenants of the Hunt Addition described an open porch as not being considered as a part of the building. Plaintiffs partially erected an enclosed porch.

The City of Richmond enacted a zoning ordinance in 1953, which plaintiffs-appellants contend did not adopt a Master Plan and that a Master Plan was required by the Zoning Act of 1947, Burns, § 53-701 *et seq.*, although such a Master Plan was prepared and the zoning ordinance stated that it was intended to implement the Master Plan. The city required plaintiffs-appellants to tear down the partially erected enclosed porch in compliance with the zoning ordinance of 1953. No legal action was brought by the city against the plaintiffs-appellants, yet they contend they were required to obtain legal counsel to protect their rights.

The plaintiff-appellant, Carl H. Hawkins, was appointed Building Commissioner in 1964 by the Mayor of Richmond at a salary of approximately $5,250 a year. Plaintiffs-appellants contend that the Board of Zoning Appeals objected to the plaintiff's appointment because of the unsettled dispute as to the zoning ordinance and by threats and other actions caused the Mayor to dismiss the plaintiff as Building Commissioner of the City of Richmond. There seems to be no doubt as to Mr. Hawkins' competency for his employment.

Harold Clary, former Vice-president of the City Plan Commission, a member of the Board of Zoning Appeals, testified that in 1953 a Master Plan was prepared by the Sheridan firm of Indianapolis, as required by the 1947 Zoning Act (Burns, § 53-701, *et seq.*) preparatory to the enactment of the zoning ordinance. He further testified that due to some failure the Master Plan was not adopted. On April 20, 1953, the Richmond Common Council passed a zoning ordinance, General Ordinance 1472-1953.

Said ordinance was entitled:                     *"Master Plan*
                                                  *Zoning Ordinance*
                                                  *City of Richmond, Indiana*
                                                  *April 20, 1953"*

This was General Ordinance 1472-1953, of which the preamble stated, in part:

"An ordinance establishing a zoning plan for the City of Richmond, Indiana, . . . to conserve the value of property and to the end that adequate light, air, convenience of access, and safety from fire, and other dangers may be secured; that congestion in the public streets may be lessened or voided; and that the public health, safety, comfort, morals, convenience and general public welfare may be promoted in a manner which recognizes the needs of industry, business and transportation in the future growth of the city and its environs and will encourage the development of healthy surroundings for family life in residential neighborhoods; all in accordance with a Master Plan designed to assure efficiency and economy in the process of development of the city and its environs, and for the purpose of:

(1) Classifying, regulating and limiting the height, area, bulk and use of buildings hereafter to be erected or structurally altered;

(2) Regulating and determining the area of front, rear and side yards and other open spaces about buildings;

(3) Regulating and determining the use and intensity of use of land and lot areas;
        * * *"

The preamble is followed by the zoning ordinance itself, the specifications of which, in our opinion, are all in comity with the preamble setting out the purposes of the zoning ordinance.

In plaintiffs-appellants' Exhibit 12, at page 16, chart 1, "Single-Family Dwelling" under the title "Building Area" we find that portion of the ordinance which, in our opinion, applies to the building of the porch in question and reads as follows:

"Definition: The maximum horizontal projected area of a building and its accessory buildings, excluding open steps,

terraces, *open, unroofed, unenclosed porches;* or architectural appurtenances profecting not more than 24 inches." (Our emphasis.)

The ordinance pertains to the occupancy of lots of all districts within the city of Richmond.

In 1959 plaintiffs-appellants built their home on West "G" Street after securing a permit to build the home. On this permit they started to build a porch in violation of the zoning ordinance and on May 14, 1959, D. C. Sligar, the Richmond Building Commissioner, wrote the plaintiffs-appellants that the veranda was in violation of Permit No. 75 and must be brought into compliance.

Plaintiffs-appellants tore the superstructure of the veranda down, leaving the slab, and later on, in the year of 1962, without any building permit, built the superstructure above the slab and completed their veranda.

On August 8, 1962, plaintiff-appellant wrote the City Controller, sending a check for a permit to finish the roof over his porch. His check was returned with a note stating that there having been no application received by the Building Inspector's office nor any permit issued, the office could not accept the check. Then, on November 15, 1962, D. C. Sligar, Building Inspector, wrote the Secretary of the Zoning Board, proposing that it "Accept the improvement as an existing non-conforming use with no permit. This opinion is based on the aggravated situation. Other like situations in the neighborhood having been granted by the Board, and the neighbors' petitions for approval on file with Mr. Hawkins' original appeal."

On March 7, 1963, Mr. Calvelage, Assistant Commissioner of Buildings, wrote the plaintiffs-appellants that he was returning their check for a permit to place shingles on the existing porch, since no permit was ever issued for the construction.

The then-Mayor Cordell of Richmond testified he tried to persuade plaintiff-appellant to comply with the Board of Zoning Appeals' demand to tear the roof off his porch, and offered to help.

Plaintiffs-appellants Hawkins contended the zoning restrictions were not legal in the absence of a Master Plan.

Plaintiffs-appellants contend in furtherance of this argument that, pursuant to Burns § 53-735, which refers to Master Plans under planning and zoning and lists 18 categories of permissible subjects. However, they contend that these relate to policies and do not constitute regulations. It is our opinion that these categories of permissible subjects do not relate to policies but do, in fact, constitute regulations which the Master Plan may set up if the same is included in the preamble of the ordinance. It is our further opinion that in General Ordinance 1472-1953 the preamble is adequate to include the regulations so covered by the statute and has in the General Ordinance specifically covered, among other regulations, the regulation as to the height of a structure within so many feet of the sidewalk, including the residence of the plaintiff-appellants.

Although Harold Clary, former Vice-president of the City Plan Commission, a member of the Board of Zoning Appeals, testified that in 1953 a Master Plan was prepared, as required by the 1947 Zoning Act preparatory to the enactment of the zoning ordinance, and he further testified that there was a failure to adopt the Master Plan, Mayor Cordell testified to the contrary. Mayor Cordell testified that he met with the full Board, which complained to him about plaintiff-appellant Hawkins' front porch. Mayor Cordell further testified he became Mayor in 1964 and at that time the City did not have a Master Plan. He further testified in response to a question as to when the ordinance, which was the cause of the difficulty with Mr. Hawkins, was passed, that the Building Code Ordinance was passed prior to his administration.

In our opinion, the statement in the ordinance that the ordinance was enacted to implement the Master Plan which had been prepared demonstrates by a preponderance of the evidence that the zoning ordinance did have and include within it the Master Plan which was necessary to give it full force and effect.

The trial judge was not bound to accept the evidence of Mr. Harold Clary to the exclusion of the evidence of former Mayor Cordell, and vice-versa.

In fact, the brief is so written that it was necessary to go to the transcript to determine just what was being set out in a narrative form and there we found, in reading the evidence, that the trial judge had himself admonished counsel that it was his duty to weigh the evidence and determine from the evidence whether the Master Plan had been adopted in the zoning ordinance. With the trial judge's statement we wholeheartedly agree. It was the trial judge's responsibility to accept the evidence of each of these men and take it for what value he deemed it to have, as it was his duty, as trial judge, to accept and consider all evidence of probative value pertaining to the issues.

There is nothing in the record to indicate that the ordinance was duly advertised after it was adopted and neither was the question raised and there is nothing in the record that would lead this court to believe that the procedure was not properly perfected. Further, we do not have to pass on this question as it was not presented by plaintiffs-appellants in their motion to correct errors or in their brief.

We have been unable to find any case squarely in point in the State of Indiana which settles the law as to whether or not a Master Plan may be included in the zoning ordinance and treated as one, or whether there should be a Master Plan and zoning ordinance separate and apart from one another and when duly enacted by the Common Council each advertised separately pursuant to statute.

101 C. J. S. *Zoning*, § 87, p. 838, *Master or Comprehensive Plan,* states in its headnote:

"A zoning ordinance is amendable even though it constitutes a master or comprehensive plan; but the change should conform to, or bear some reasonable relation to, the basic zoning scheme."

Following the headnote the author says:

". . . a zoning ordinance is mutable or amendable even though it constitutes a master or comprehensive plan, . . ."

Ind. Ann. Stat. § 53-703 (Burns 1964 Repl.), which is a part of the 1947 Acts as amended in 1953, in our opinion, establishes that it was the intent of our General Assembly that the chief legislative body of a city or incorporated town could adopt a Master Plan by including the same in the original zoning ordinance and could include other and additional implementing ordinances to complete the Master Plan or parts thereof by legislative approval for such regulations as it deemed necessary and their enforcement pursuant to that part of said statute which reads as follows, to-wit:

". . . 'master plan' means a complete master plan or any of its parts such as a master plan of land use and zoning; of thoroughfares; of sanitation; of recreation, and other related matters, and including such ordinance or ordinances as may be deemed necessary to implement such complete master plan or parts thereof by legislative approval and provision for such regulations as are deemed necessary and their enforcement . . ."

The 1947 Act on Planning and Zoning provides, in Ind. Ann. Stat. § 53-737 (Burns 1964 Repl.)—Notice and hearing on adoption of master plan-Publication, that prior to the adoption of the master plan the Commission shall give notice and hold a public hearing on the plan and proposed ordinance for its enforcement.

It must be noted in the case at bar that Exhibit 12 was entitled:

"Master Plan
Zoning Ordinance
City of Richmond, Indiana
April 20,1953"

Ind. Ann. Stat. § 53-738 (Burns 1964 Repl.) reads as follows:

"Adoption of plan by commission after hearing—Recommendation of ordinance.—After a public hearing has been held, the commission may by resolution adopt the master plan and recommend the ordinance to the city council or the board of county commissioners."

Under the above statute the Zoning Commission can adopt a Master Plan and recommend the ordinance to the City Council, which indicates the actual adoption of the ordinance must be done by the City Council, whereas the adoption of the plan is by the City Plan Commission or Zoning Commission.

It is permissible at the same hearing that the Commission can recommend the ordinance to the City Council for adoption. Final adoption of the zoning ordinance must be by the City Council.

Ind. Ann. Stat. § 53-741 (Burns 1964 Repl.) provides that both the master plan and ordinance can be rejected as a whole or adopted as a whole by the City Council.

Ind. Ann. Stat. § 53-742 (Burns 1964 Repl.) indicates that after adoption of the master plan and ordinance that the two are treated together for all future amendments.

In the case of *Antrim* v. *Hohlt* (1952), 122 Ind. App. 681, 108 N. E. 2d 197, wherein the trial court held that the granting

of a variance for the construction of an apartment building with a frontage that would change the character of a residential district in which single family dwellings were to have 7,500 square feet of land, the court held that the zoning board did not have power to grant variances which constituted such a substantial change in the master zoning plan.

The court further said, in *Antrim*, that the record did not present a case under the hardship provisions of sections of the zoning ordinance of which one provision required that the variance and exception be in general keeping with and appropriate to the uses or buildings authorized in any district or existing on neighboring property. Under both sections, any variance is required to be in harmony with the general spirit and intent of the ordinance.

". . . Any variance which so changes the character of an area so that it is not in harmony with the general purpose and intent of the zoning ordinance must be effected by an amendment of the zoning ordinance of which the master plan is a part. [Citing cases.]"

The court further said:

"To permit Boards of Zoning Appeals to change substantially the master zoning plans in use districts created by zoning ordinance would constitute an improper delegation of powers of the legislative body of the municipality . . ."

Defendants-appellees contend that it is clear from the *Antrim* case, *supra*, that the intent of the Legislature as construed by the Supreme Court of the State of Indiana was such that the master plan and the zoning ordinance are interchangeable and construed as one and, thus, when the City of Richmond passed its 1953 zoning ordinance, pursuant to the procedure set out in Burns Ind. Ann. Stat. § 53-756, *et seq.* a comprehensive zoning plan and Master Plan of land use within the meaning of the 1947 Planning and Zoning Act was complied with and adopted according to the proper procedural requirements for such Master Plan and zoning ordinance. With such contention we fully agree.

I. L. E., Vol. 30, *Zoning,* § 2, pp. 636-637, states:

"The Zoning Act of 1947, as amended, authorizes each city council, each town board of trustees, and each board of county commissioners in the State to create a plan commission in order to promote the orderly development of its governmental units and its environs, *and it confers on a plan commission, when created, certain duties and powers, including the adoption of a master plan dealing with a development program for the area, which if not objected to by the city council or board of county commissioners becomes effective as an ordinance . . ."* (Our emphasis.)

We are of the opinion from the record in this cause that any moneys expended by the plaintiffs-appellants which they so determine to be damages were spent of their own volition and not as a proximate result of the enforcement of the Master Zoning Plan of 1953. It is true the Board of Zoning Appeals and Building Inspector did not grant appellants a variance or permit to construct the porch for the reason it was in violation of the 1953 Master Plan Zoning Ordinance. It would have been improper to have granted the permit. The action was taken against the city by the plaintiffs-appellants of their own free will and moneys expended by them for survey, legal advertising and attorneys' fees cannot be considered as damages.

Plaintiff-appellant Mr. Hawkins was recognized as being a competent builder and even though he had been at loggerheads with the Zoning Board and city officials over a number of years Mayor Cordell appointed him Building Commissioner at a salary of $5,250 a year. He says in his brief that he was fired by the Mayor because of pressure brought on by officers of the Zoning Board. Mr. Hawkins did testify that the Mayor told him it had to be the job or the porch. He says he was offered that choice. In the transcript, at page 123, under the evidence of Edward L. Cordell, the following questions were asked, to which were given the following answers:

"Q. Would you tell the Court what was the trouble—what it was, and who spoke for the Board, if you remember?

A. I can't remember who spoke for the Board. I did at a meeting—a Board of Zoning Appeals meeting—as most of the Boards I did attend—they were objecting that Mr. Hawkins had a porch on his home that did not conform with the ordinances of the City of Richmond and asked that this be changed to conform with the ordinance.

Q. *Did they ask that he be fired?*

A. *No sir.*

Q. *Did they ask that he be fired at any time?*

A. *Not to my knowledge. There was strong objection to the porch being there while he was the Building Inspector."* (Our emphasis.)

Plaintiffs-appellants' argument that they are entitled to damages is untenable for the reason that we have heretofore held that the zoning ordinance and restrictions complained of was valid and plaintiffs-appellants brought on their own troubles.

The evidence as to plaintiff-appellant Mr. Hawkins being fired because of the pressure of certain city officials is in conflict. The fact that Mr. Hawkins had had a running feud with the city for years and continued to have the same after Mayor Cordell appointed him Building Commissioner was, of course, bad public relations. There was ample and sufficient evidence that the Mayor discharged Mr. Hawkins from his job to which he appointed him because of public relations.

Where there is a conflict in the evidence the same must be determined solely by the trial court, which was done in this case, and the law is so well settled that we do not weigh the evidence that it needs no citation of authority.

Mr. Hawkins having brought his troubles on himself by violation of the city ordinance cannot be heard to complain and is not entitled to any damages from the City of Richmond or any of its officials in office at the time this litigation was taking place.

We therefore affirm the trial court.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported in 286 N. E. 2d 682.