**TOWN OF BEVERLY SHORES PLAN COMMISSION and Board of Zoning Appeals, Appellants (Plaintiffs Below),**

v.

**Edwin ENRIGHT, Appellee (Defendant Below).**

No. 3–581A138.

Court of Appeals of Indiana, Third District.

May 17, 1982.

Bruce A. Dumas, Valparaiso, for appellants.

William H. Wagner, Barbara A. Young, Karen L. Hughes, Hoeppner, Wagner & Evans, Valparaiso, for appellee.

HOFFMAN, Presiding Judge.

The Town of Beverly Shores appeals from the trial court's judgment declaring a zoning ordinance invalid. Issues raised in the appeal concern:

    (1) whether a master plan had been developed in conjunction with the zoning ordinance;

    (2) whether the Town complied with the statutory procedures when enacting the original ordinance; and

    (3) whether the Town complied with the statutory procedures in enacting an amendment to the original ordinance.

In 1971 Edwin Enright applied for a building permit to construct a single family dwelling in Beverly Shores. The property on which the dwelling was to be built was located in an area designated R–1 (single family dwellings only). It was discovered in May of 1975 that Enright had in fact constructed a multiple family dwelling in violation of the zoning ordinance. Enright applied for a variance. The Board of Zoning Appeals, however, denied the application.

The Town filed a complaint for permanent injunction in 1977. Enright, in a counterclaim and an affirmative defense charged that the Town had failed to follow the statutory procedures in enacting the zoning ordinance and its subsequent amendment. The trial court found in favor of Enright on the affirmative defense and declared the zoning ordinance, and the subsequent amendment, invalid.

The Town initially challenges the trial court's finding that the Town did not prepare or adopt a master plan prior to, or contemporaneously with, the adoption of the original zoning ordinance in 1959 or the amendment in 1969. The existence of a master plan was a prerequisite to the adoption of a zoning ordinance in accordance with IC 1971, 18–7–5–32 (now repealed).

Initially it must be noted that a zoning ordinance may include the necessary master plan within its provisions. *Hawkins v. City of Richmond et al.* (1972), 153 Ind. App. 185, 286 N.E.2d 682. In order to determine whether a particular ordinance is sufficient to constitute a master plan, two statutes are of particular relevance. IC 1971, 18–7–5–32 (Burns Code Ed.) (now repealed) provides:

"Master plan—Purpose—Policies formulated.—So as to assure the promotion of public health, safety, morals, convenience, order, or the general welfare and for the sake of efficiency and economy in the process of development, the plan commission shall prepare a master plan. It may also formulate policies for:

1. The development of public ways, public places, public structures and public and private utilities.

2. The issuance of improvement location permits on platted and unplatted lands.

3. The laying out and development of public ways and services to platted and unplatted lands."

The specific subject matter of a master plan is provided for in IC 1971, 18–7–5–37 (Burns Code Ed.) (now repealed) as follows:

"Master plans—Subject-matter included. —A master plan may include:

1. Careful and comprehensive surveys and studies of existing conditions and the probable future growth of the city and its environs or of the county.

2. Maps, plats, charts and descriptive material presenting basic information, locations, extent and character of any of the following:

   a. History, population and physical site conditions.

   b. Land use, including the height, area, bulk, location and use of private and public structures and premises.

   c. Population densities.

   d. Community centers and neighborhood units.

   e. Blighted and slum areas.

   f. Streets and highways, including bridges, viaducts, subways, parkways, alleys and other public ways and places.

   g. Sewers, sanitation and drainage, including handling, treatment and disposal of excess drainage waters, sewage, garbage, refuse and other wastes.

   h. Stream pollution.

   i. Flood control and prevention.

   j. Public and private utilities, including water, light, heat, communication and other services.

   k. Transportation, including rail, bus, truck, air and water transport and their terminal facilities.

   l. Local mass transit, including motor and trolley bus; street, elevated or underground railways and taxicabs.

   m. Parks and recreation, including parks, playgrounds, reservations, forests, wildlife refuges and other public grounds, spaces and facilities of a recreational nature.

   n. Public buildings and institutions, including governmental administration and service buildings, hospitals, infirmaries, clinics, penal and correctional institutions and other civic and social service buildings.

   o. Education, including location and extent of schools, colleges and universities.

   p. Land utilization, including agriculture, forests, and other uses.

   q. Conservation of water, soil, agricultural and mineral resources.

   r. Any other factors which are a part of the physical, economic or social situation within the city or county.

3. Reports, maps, charts and recommendations setting forth plans for the development, redevelopment, improvement, extension and revision of the subjects and physical situations of the city or county set out in part 2 of this section so as to substantially accomplish the object of this legislation as set out in section 1[18–7–5–1] of this act.

4. A long-range development program of public works projects, based on the recommended plans of the commission, for the purpose of eliminating unplanned,

unsightly, untimely and extravagant projects and with a view to stabilizing industry and employment, and the keeping of such program up to date by yearly revisions.

5. A long-range financial program of governmental expenditures in order that such development program may be carried out, and the keeping of such program up to date, for all separate taxing units within the city or county, respectively, for the purpose of assuring efficient and economic use of public funds."

This statute provides what *may* be included within a master plan, but does not mandate that any particular item *must* be included.

■ The 1959 zoning ordinance in the instant case is sufficient to constitute a master plan. It includes: a map which divides the town into a light industrial district, a general business district, a classified business district, and a residential district. Also included are: structural height regulations, lot area regulations, square footage regulations, specific regulations for each district, parking and loading regulations, and regulations for land which might be annexed in the future. The ordinance also includes provisions referring to: sanitary facilities; compliance with sanitary codes; fences, trees and shrubs; and signs and billboards. Article I, Section I of the ordinance provides in part: "This ordinance is hereby enacted as a Zoning Ordinance and *a part of a Master Plan* for the Town of Beverly Shores. . . ." (Emphasis added.) The public notices prior to the passage of the ordinance referred to a proposed master plan together with a proposed zoning ordinance. The factors in the present case are more indicative of the adoption of a master plan than those found to be sufficient for such an adoption in *Hawkins v. City of Richmond, supra*. The trial court's finding with regard to the absence of a master plan is therefore erroneous.

The trial court also concluded that the 1959 ordinance was invalid and unenforceable because the legal notice of a public hearing on the adoption of the proposed ordinance did not comply with IC 1971, 18–7–5–64 (Burns Code Ed.) (now repealed). The statute provides:

"Public hearings on final report—Notices.—After the final report has been submitted by the plan commission, the city council or the board of county commissioners shall afford all interested persons an opportunity to be heard with reference to it at public hearings convenient for all persons affected to be held at times and places to be specified in *notices to be published in a daily newspaper of general circulation* in the city or county. The notices shall state the times and places of the hearings, that the report contains a comprehensive zoning ordinance for the city or county, that written objections to the final report filed with the clerk of the city council or with the county auditor at or before the hearings will be heard and that the hearings will be continued from time to time as may be found necessary. *The notice shall be published at least twice within ten [10] days before the time set for the hearings*, during which time the final report shall be on file in the office of the plan commission for public examination. Upon completion of the public hearings, the city council or the board of county commissioners shall proceed to the consideration of the ordinance." (Emphasis added.)

■ The record reveals that notices were published in both *The Chesterton Tribune* and *The Porter County Herald* on November 20 and November 27, 1958. Both of these newspapers were public weekly newspapers of general circulation in Porter County. The public hearing was scheduled for December 1, 1958. While it is true that the November 20 publications were eleven days prior to the public hearing and therefore not in strict compliance with the statute, the two November 27 publications fulfill the requirements of IC 1971, 18–7–5–64. The statute requires only that notice of the hearing be published twice within ten days of the hearing. In order to qualify as a publication, the notice must be published in a newspaper of general circulation within the city or county. There is no requirement

that the two notices be published in the same newspaper on two different days. The Town complied with the statute by publishing the notices in two newspapers of general circulation in Porter County within ten days of the hearing.

The Town finally challenges the trial court's conclusion that the Town did not comply with the notice statutes with regard to the 1969 amendment. The Town asserts that it substantially complied with these statutes.

IC 1971, 18–7–5–39 and 18–7–5–40 (Burns Code Ed.) (now repealed) provide:

"18–7–5–39 Notice and hearing on adoption of master plan—Publication.— Prior to the adoption of a master plan, the commission shall give notice and hold a public hearing on the plan and a proposed ordinance for its enforcement.

At least ten [10] days prior to the date set for hearing, the commission shall publish in a newspaper of general circulation in the city or county a notice of the time and place of the hearing."

"18–7–5–40 Adoption of plan by commission after hearing—Recommendation of ordinance.—After a public hearing has been held, the commission may by resolution adopt the master plan and recommend the ordinance to the city council or the board of county commissioners."

These statutes apply to amendments to a master plan pursuant to IC 1971, 18–7–5–44 and 18–7–5–67 (Burns Code Ed.) (now repealed).

The record reveals that on June 19, 1969 the Beverly Shores Plan Commission passed a motion to recommend the amendment to the Town Board of Trustees for adoption. There appears to have been neither notice, nor a public hearing prior to passing the motion. On July 17, 1969, after proper notice, a joint meeting of the Board of Trustees and the Plan Commission was conducted. At this meeting, the amendment was read and objections were heard. Members of the Plan Commission passed a motion that the first reading of the amendment be accepted subject to revision. There were published notices prior to this meeting. Subsequent events were as follows:

| | |
|---|---|
| July 24, 1969 | Plan Commission considered revisions and amendment; no legal notice published. |
| August 14, 1969 | Second reading of amendment by Plan Commission; no legal notice published. |
| September 4, 1969 | Plan Commission considered revisions to amendment; no legal notice published. |
| September 10, 1969 | Board of Trustees passed a motion to adopt the amendment and revisions to the ordinance; no legal notice published. |

It is apparent from the record that the Plan Commission did, in effect, adopt and recommend to the Board of Trustees the amendment to the ordinance on June 19, 1969. There was no notice of a public hearing published prior to this meeting. Assuming for the sake of argument that this Court's standard of review with respect to the notice provisions is one of substantial compliance, the Town has failed to establish that it substantially complied with the statute. The notice provisions of the statute serve to give residents an opportunity to voice objections to the proposed amendment prior to its adoption and recommendation by the Plan Commission. Here, there was no public hearing on the amendment until after the Plan Commission voted to recommend the amendment to the Board of Trustees. The public hearing at the joint meeting of the Plan Commission and the Board of Trustees did not cure the prior defect. The trial court did not err in finding the 1969 amendment to the zoning ordinance invalid.

For the above reasons the trial court's order with regard to the 1959 ordinance is reversed; the order, with regard to the 1969 amendment is affirmed, and the case is remanded to the trial court for proceedings consistent with this opinion.

GARRARD and STATON, JJ., concur.